**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CHARLES BLACKWELL**,

     Plaintiff,

v.

**STEVEN CHISHOLM**, in his
Individual capacity; **DAVID JONES**
in his individual capacity; **CITY OF INKSTER**
a government entity.

     Defendant's

**Hon Judge:**

**JURY TRIAL DEMAND**

Case: 2:23−cv−13015
Assigned To : Goldsmith, Mark A.
Referral Judge: Altman, Kimberly G.
Assign. Date : 11/27/2023
Description: CMP CHARLES
BLACKWELL V STEVEN
CHISHOLM ET AL (SS)

## COMPLAINT

**NOW COMES** Plaintiff, CHARLES BLACKWELL, ("Blackwell" or "Plaintiff") states as follows for his Complaint against Defendants:

## NATURE OF CASE

1.    This case is about a coordinated effort by City of Inkster appointed and elected officials in retaliating against an outspoken citizen who criticized Inkster government officials. The Inkster City Council used taxpayer funds to provide direct legal representation to the Inkster City Attorney to file a retaliatory personal protection order ("PPO") against

the Plaintiff in order to silence him and prevent him from further attending Inkster City Council meetings.

## PARTIES, JURISDICTION, AND VENUE

2.  Plaintiff Charles Blackwell is a resident in the Eastern District of Michigan and is an activist who tackles corruption, transparency, and open government issues with multiple municipalities in the Metro Detroit area.

3.  Defendant, City of Inkster, is a municipal corporation located in Wayne County, Michigan. This municipal corporation was created and exists under and by virtue of the law and Constitution of the United States and State of Michigan.

4.  Defendant, Steven Chisholm, currently holds public office as a City of Inkster City Council member and resides in Inkster, Michigan. At all material times, Defendant Chisholm was acting under the color of the law.

5.  Defendant, David Jones, currently holds public office as the City of Inkster City Attorney and City of Inkster City Prosecutor pursuant to the 2016 City of Inkster City Charter. Defendant David Jones is legally deemed an employee of the City of Inkster pursuant to the Inkster City

Charter Section 6.5(d). At all material times, Defendant Jones was acting under the color of the law.

6.  This is a civil action brought pursuant to 42 U.S.C §§ 1983 and 1988, and the First and Fourteenth Amendments to the United States Constitution.

7.  This Court has subject matter jurisdiction over Plaintiff's claims based upon the laws of the United States pursuant to 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights).

8.  Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1393(a); as one or more of the Defendants reside in and/or are incorporated in this District; and the claims asserted herein arose in this District.

## COMMON FACTUAL ALLEGATIONS[1]

9.  Plaintiff incorporates, repeats, and re-alleges the foregoing allegations as though they were fully set forth and stated herein.

10. Since 2014, Plaintiff Blackwell has been permanently paralyzed and confined to a wheelchair.

---

[1] The factual allegations included in this Complaint is not the complete and full extend of the allegations between the parties. For the purposes of brevity, the Plaintiff is only including the minimum allegations to comply with Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal plausibility pleading standards.

11. Plaintiff Blackwell owns three legal firearms. Plaintiff has a valid and active Michigan concealed pistol license ("CPL") issued by the State of Michigan to possess and carry firearms. Plaintiff carries these firearms for self-defense purposes only.

12. Plaintiff Blackwell has never been arrested, charged, or convicted of a crime (felony or misdemeanor) anywhere in the United States. This includes state and federal courts.

13. Defendant City of Inkster has a contract with the law firm of Schenk and Bruetsch PLLC to act as the Inkster City Charter mandated City Attorney and City Prosecutor. See Inkster City Charter Section 6.5.

14. Defendant Jones is the appointed City of Inkster municipal City Attorney and City Prosecutor from the Schenk and Bruetsch law firm pursuant to the Inkster City Charter Section 6.7.

15. Pursuant to his Inkster City Charter appointed role as the Inkster City Attorney and City Prosecutor, Defendant Jones is vested with all powers under the Constitution and State law. See Inkster City Charter Section 3.1.

16. Defendant Jones is directly paid by Schenk and Bruetsch PLLC law firm, but the Inkster City Charter deems Defendant Jones's appointment as City Attorney as an administrative officer of the city.

The City Charter deems an administrative officer of the city as a direct employee of the city. See Inkster City Charter Section 6.5(d).

17. Since 2020, Plaintiff Blackwell has attended over thirty City of Inkster City Council meetings (virtual via Zoom or in-person) and has criticized Defendant Jones in his role as Inkster municipal City Attorney, Defendant Chisholm, Inkster Mayor Patrick Wimberly, and other Inkster City officials.

***Plaintiff Attend's July 18th, 2022, Inkster City Council Meeting and Criticizes Defendant Jones***

18. On July 18th, 2022, Plaintiff Charles Blackwell attended the July 18th City of Inkster City Council in-person meeting located at Inkster City Hall.

19. At this City Council meeting, Plaintiff Blackwell carried and held a political satire poster board which depicted Defendant Jones's wife lying in bed next to the City of Inkster Mayor which included a caption stating that Defendant Jones was "a bad Inkster City Attorney." (left picture: plaintiff holding poster board at July 18th City Council) (right picture: clearer picture of poster board content).

 

20. At this July 18ᵗʰ Inkster City Council meeting, Plaintiff Blackwell also expressed criticism of Defendant Jones in his role as Inkster City Attorney by calling him a "chump."

***The Very Next Day, Defendant Chisholm Uses His Official City Council Instagram Account And Email Address to Provide Defendant Jones with Pictures of The Plaintiff Legal Firearms to Be Used in A PPO Against Plaintiff.***

21. Plaintiff Blackwell has a private Instagram account titled "_charleslb" in which his Instagram page was not open to the public. Plaintiff Blackwell controlled which Instagram users could be a follower on his private Instagram page.

22. As an example, Plaintiff Blackwell had an innocuous and non-threatening social media post on his Instagram page stating, "Just

bought me a Ruger .380 for my Birthday to go with my Glock 43x. <u>PS: I'm a legal, registered, and licensed gun owner</u>." (emphasis added).



23. Defendant Chisholm has an official City of Inkster Instagram page titled "CouncilmanChisholm."

24. Defendant Chisholm was a follower on the Plaintiff's private Instagram page.

25. Defendant Jones was not a follower on the Plaintiff's Instagram page, nor did he personally have access to the content of the posts on the Plaintiff's Instagram page.

26. On or about July 19th, 2022, Defendant Chisholm at the request of Defendant Jones used his official City of Inkster Instagram account to screenshot pictures of the innocuous and non-threatening firearms posts that were on Plaintiff Blackwell's private Instagram page. See **Exhibit A**

27. On July 19th, 2022, Defendant Chisholm used his official City of Inkster government provided email address (schisholm@cityofinkster) to email Defendant Jones the firearms pictures Defendant Chisholm screenshotted off the Plaintiffs' Instagram page.

28. Defendant Chisholm was personally aware that the pictures he was providing to Defendant Jones were going to be used in a PPO lawsuit against the Plaintiff.

29. Defendant Jones and Chisholm were aware that providing a Judge with pictures of the Plaintiff possessing firearms on social media would increase the likelihood that a Judge would grant a PPO against the Plaintiff because of the stigma surrounding firearms.

***Three Days After Plaintiff Attended The July 18th, 2022 Inkster City Council Meeting Criticizing Defendant Jones, Defendant Jones Files For PPO Against Plaintiff.***

30.　On July 21st, 2022, Defendant Jones, acting pro se, applied for an ex-parte non-domestic personal protection order (PPO) pursuant to MCL 600.2950a(1) in Wayne County Circuit Court, Family Division. See David Jones v. Charles Blackwell, Case No. 22-108559-PH, Wayne County Circuit Court, Family Division. See **Exhibit B**

31.　On July 21st, 2022, Defendant Jones was working in his official capacity as Inkster City Attorney the day he filed for his PPO against the Plaintiff. The City of Inkster Schenk and Bruetsch PLLC July 2022 legal invoice shows Defendant Jones billed the City of Inkster for City Attorney work on July 21st, 2022.

32.　Defendant Jones's ex-parte PPO petition included the innocuous and non-threatening firearms pictures that Defendant Chisholm screenshotted off the Plaintiff's private Instagram page. See **Exhibit B, PPO petition at pg. 3** (stating "Exhibit D: Blackwell social media post boasting of his firearms").

33.　On July 22nd, 2022, Wayne County Circuit Court Judge Mary Beth Kelly entered an PPO against the Plaintiff valid from July 22nd, 2022, to July 23rd, 2023. See **Exhibit C**

34.   As a result of this PPO, Plaintiff Blackwell was restrained and prohibited from possessing firearms, further appearing at Inkster City Hall including City Council meetings, from communicating via any method directly to Defendant Jones or about him. See **Exhibit C**.

35.   Attorney Thomas Patrick Bruetsch from the Schenk and Bruetsch law firm (Defendant's Jones's law partner) represented Defendant Jones in the trial court and appellate PPO proceedings.

36.   On July 25th, 2022, Plaintiff Blackwell filed a motion to terminate and rescind Defendant Jones's ex-parte PPO alleging that it was illegally issued because it was based on Plaintiff Blackwell's constitutionally protected speech.

37.   On July 27th, 2022, Oakland County Clerk Lisa Brown mailed the Plaintiff a letter stating that the Plaintiffs CPL license was revoked immediately due to Defendant Jones's PPO against the Plaintiff.

38.   On August 4th, 2022, and September 26th, 2022, there was evidentiary hearings on Plaintiff's motion to terminate the ex-parte PPO. Attorney Thomas Patrick Bruetsch was present representing Defendant Jones at these hearings advocating against terminating the PPO.

39.   On October 7th, 2022, Wayne County Judge Alexis Glendening denied the Plaintiff's motion to terminate and rescind Defendant Jones's ex-parte PPO.

40.   On October 11th, 2022, Plaintiff Blackwell filed an appeal by right to the Michigan Court of Appeals. This case was then assigned the case caption of DWJ v. CLB, Court of Appeals Docket No. 363324.

***Inkster City Council Concealment scheme to conceal the improper use of public funds for Defendant Jones's PPO Against Plaintiff***

41.   The Inkster City Council engaged in a scheme with Schenk and Bruetsch PLLC law firm to conceal the improper expenditure of taxpayer funds for the legal representation of Defendant's Jones's PPO against the Plaintiff.

42.   Defendant City of Inkster and Schenk and Bruetsch PLLC law firm used the fraudulent concept of billing Defendant Jones's PPO legal representation against Plaintiff Blackwell each month under the misleading legal invoice headers of "Charles Blackwell (Facebook)" or "Charles Blackwell (False Imprisonment)."



**INVOICE**

Invoice # 15422
Date: 09/05/2023
Due Upon Receipt

211 W. Fort Street, Suite 1410
Detroit, Michigan 48226
United States

City of Inkster

**Blackwell, Charles (False Imprisonment)**

**Blackwell, Charles (False Imprisonment)**

43. As previously alleged, Defendant City of Inkster had no reasonable basis to have a legal invoice titled "Blackwell, Charles (False Imprisonment" because (1) Plaintiff Blackwell has never been detained, arrested, or even charged with a crime a day in his lifetime (2) Plaintiff Blackwell has never sued the City of Inkster for false imprisonment.

44. On September 26th, 2022, there was a 4+ hour long evidentiary hearing in the PPO case in which Attorney Thomas Bruetsch was present representing Defendant Jones.

45. Redacted September 2022 Schenk and Bruetsch legal invoices obtained by the Plaintiff pursuant to a Freedom of Information Act ("FOIA) request shows that Attorney Thomas Patrick Bruetsch billed the City of Inkster on September 26th, 2022, for 6.75 hours of work

under the header "Blackwell, Charles (Facebook)." The hours billed by Attorney Bruetsch similarly aligns with the hours spent at the PPO hearing.

46. Attorney Thomas Bruetsch September 26th, 2022 billing entry under the September 2022 legal invoice header "Blackwell, Charles (Facebook)" was for his representation at the September 26th PPO hearing.

47. As another example: On August 7th, 2023, Plaintiff Blackwell filed a request in the Michigan Court of Appeals in the PPO case for leave to appear for oral argument remotely via Zoom. This request was served on Attorney Thomas Bruetsch via the MI True File system on August, 7th, 2023.[2] See **Exhibit D**

48. A unredacted August 2023 legal invoice from Schenk and Bruetsch PLLC shows that Attorney Thomas Patrick Bruetsch billed the City of Inkster on August 7th, 2023 for "review notice from court of appeals" under invoice #15422 titled "Blackwell, Charles (False Imprisonment)." See **Exhibit E**

---

[2]     MI True File System is Michigan's electronic court system for filing court documents and serving them. It is the Federal Court systems equivalent of (PACER) and CM/ECF system.

49. On August 7th, 2023, Plaintiff Blackwell had no open or pending Court of Appeals matter in state or federal court regarding false imprisonment.

50. As of the August 7th, 2023, the only Court of Appeals lawsuit the Plaintiff had in state or federal court was the appeal of Defendant Jones's PPO.

***Each month, the Inkster City Council approved payment of the Schenk and Bruetsch's legal invoices for Defendant Jones's PPO against Plaintiff.***

51. Resolutions passed by the City of Inkster City Council at Inkster City Council meetings held under the Michigan Open Meetings Act constitutes official policy of the City.

52. Each month at Inkster City Council meetings, the Inkster City Council voted via official resolution to approve payment of the Schenk and Bruetsch invoices of Defendant Jones's PPO legal representation against the Plaintiff.

53. Inkster City Council members, including Defendant Chisholm who is a City Council member, had actual and constructive knowledge beforehand that the Schenk and Bruetsch monthly legal invoices contained billing for Defendant Jones's PPO against the Plaintiff.

54.   On August 15th, 2022, Defendant City of Inkster, by and through the Inkster City Council, passed resolution 08-22-116R which approved payment of the July 2022 Schenk and Bruetsch PLLC legal bill which included Defendant Jones's PPO legal representation against the Plaintiff.

55.   On September 19th, 2022, Defendant City of Inkster, by and through the Inkster City Council, passed resolution 09-22-132R which approved payment of the August 2022 Schenk and Bruetsch PLLC legal bill which included Defendant Jones's PPO legal representation against the Plaintiff.

56.   On December 19th, 2022, Defendant City of Inkster, by and through the Inkster City Council, passed resolution 12-22-173R which approved payment of the November 2022 Schenk and Bruetsch PLLC legal bill which included Defendant Jones's PPO legal representation against the Plaintiff.

57.   On March 20th, 2023, Defendant City of Inkster, by and through the Inkster City Council, passed resolution 03-23-044R which approved payment of the February 2023 Schenk and Bruetsch PLLC legal bill which included Defendant Jones's PPO legal representation against the Plaintiff.

58. On April 17th, 2023, Defendant City of Inkster, by and through the Inkster City Council, passed resolution 04-23-053R which approved payment of the March 2023 Schenk and Bruetsch PLLC legal bill which included Defendant Jones's PPO legal representation against the Plaintiff.

59. On May 15th, 2023, Defendant City of Inkster, by and through the Inkster City Council, passed resolution 05-23-069R which approved payment of the April 2023 Schenk and Bruetsch PLLC legal bill which included Defendant Jones's PPO legal representation against the Plaintiff.

60. On July 17th, 2023, Defendant City of Inkster, by and through the Inkster City Council, passed resolution 07-23-106R which approved payment of the June 2023 Schenk and Bruetsch PLLC legal bill which included Defendant Jones's PPO legal representation against the Plaintiff.

**Michigan Court of Appeals Reverses Defendant Jones's PPO Against Plaintiff Blackwell On First Amendment Grounds As Protected Speech.**

61. On November 2nd, 2023, the Michigan Court of Appeals in an unpublished per curiam opinion reversed Defendant's Jones's PPO against the Plaintiff because the Plaintiff's speech was constitutionally

protected at all material times. See DWJ v. CLB, unpublished per curiam opinion of the Court of Appeals, issued November 2nd, 2023 (Docket No. 363324). See **Exhibit F**

62.  The Court of Appeals also made a finding as a matter of law that Defendant Jones was a public officer as the City of Inkster municipal City Attorney.

## CAUSES OF ACTION
## COUNT I
### 42 U.S.C § 1983 --- First and Fourteenth Amendments
### (Retaliation Claim Against Defendant's Chisholm and Jones)

63.  Plaintiff incorporates, repeats, and re-alleges the foregoing allegations as though they were fully set forth and stated herein.

64.  At all relevant times, Defendant's Jones and Chisholm were acting under the color of the law for purposes of 42 U.S.C 1983.

65.  The right to be free from retaliation from the government for protected speech (i.e., criticism of the government) is protected by the First Amendment and has been well established.

66.  As the Sixth Circuit has recognized, the "First Amendment right to criticize public officials is well-established and supported by ample case law. Furthermore, it is well-established that a public official's retaliation against an individual exercising his or her First Amendment

rights is a violation of § 1983." Barrett v. Harrington, 130 F.3d 246, 264 (6th Cir.1997).

67. Plaintiff Blackwell's right to criticize City of Inkster government officials was well-established at the time of Defendant's violation of the Plaintiffs' constitutional rights. Therefore, Defendant's Jones and Chisholm are not entitled to qualified immunity.

68. Plaintiff engaged in constitutionally protected speech by calling Defendant Jones a "chump" and carrying a political satire poster board at the July 18th, 2022, Inkster City Council meeting.

69. The Michigan Court of Appeals in its November 2nd, 2023, opinion has already made a legal ruling as a matter of law that at all material times that the Plaintiff was engaged in constitutionally protected speech at the July 18th, 2022, Inkster City Council meeting.

70. Defendants adverse action of planning, orchestrating, and seeking a PPO against the Plaintiff would deter and chill a person of ordinary firmness from further engaging in said protected speech and activities.

71. Defendant's Jones and Chisholm were both motived to retaliate against the Plaintiff due to the Plaintiff's attendance at the July 18th, 2022, Inkster City Council meeting while holding an offensive poster

board of Defendant Jones's, his wife and City of Inkster Mayor Patrick Wimberly.

72. Defendant Chisholm took the adverse action of screenshotting firearms that he knew to be legally owned and possessed by the Plaintiff and providing them to Defendant Jones to be used in a PPO proceeding against the Plaintiff.

73. Defendant's Jones and Chisholm actions direct and proximate actions led to the Wayne County Circuit Court imposing the ex parte PPO against the Plaintiff.

74. But for Defendant's Jones's and Chisholm's action, a PPO would have not been imposed against the Plaintiff and the Plaintiff would have not suffered a deprivation of his constitutional rights by the imposition of the PPO.

75. The adverse actions violated the Plaintiff's First Amendment rights to freedom of association, to freedom of speech and/or expression, and/or to petition government for the redress of grievances in that they were made in significant part due to the Plaintiff's statements, actions, and/or activities that were protected under the First Amendment.

76. As a direct and proximate result of this PPO, the Plaintiff's right to freedom of speech, right to petition the government, and right to peaceful assembly were all restrained pursuant to this PPO.

77. The constitutional rights that Defendants violated were clearly established at the time that the violated occurred and any reasonable Individual in the position of the Defendant's would have understood that their conduct violated Plaintiff's constitutional rights.

78. As a direct and proximate result of the Defendants' violations of the Plaintiff's constitutional rights, Plaintiff has sustained damages including (but not necessarily limited to) the following:

    a. Severe mental anguish and distress;
    b. Embarrassment and humiliation;
    c. Fright, shock, and mortification;
    d. Damage to reputation;
    e. Liquidated damages;
    f. Punitive damages;
    g. Exemplary damages
    h. economic damages from legal expenses from PPO
    i. nominal damages

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court to enter a judgment in his favor against the Defendants, jointly and severally, awarding him an amount in excess of Seventy-Five Thousand ($75,000) Dollars to which he is entitled for compensatory, exemplary, liquidated, and

punitive damages; granting him equitable relief; and awarding him costs, and interest so wrongfully incurred.

**COUNT II**

**42 U.S.C § 1983 --- *Monell* Liability**

**(Unconstitutional Official Policy or Legislative Enactment)**

**(Against Defendant City of Inkster)**

79. Plaintiff incorporates, repeats, and re-alleges the foregoing allegations as though they were fully set forth and stated herein.

80. Plaintiff engaged in constitutionally protected speech by calling Defendant Jones a "chump" and carrying a political satire poster board at the July 18th, 2022, Inkster City Council meeting.

81. A municipality is liable under 42 U.S.C. § 1983 if the alleged violations are attributable to its own policies, practices, and customs.

82. There are four avenues a Plaintiff may take to prove the existence of a municipalities illegal practice or customs. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)

83. This case is premised on the first theory of "legislative enactments or official agency policies."

84. The violation of Plaintiff's First Amendment rights resulted from the execution of the City of Inkster City Council official policy and legislative enactment of financing the direct legal representation of Defendant Jones in a PPO lawsuit against the Plaintiff.

85. The Inkster City Council is the legislative body of the municipality and establishes official policy for the City of Inkster.

86. Inkster City Charter Section 8.2 states:

    *All official action of the Council* shall be by ordinance, *resolution* or proclamation adopted by the affirmative vote of a majority of the Council members present, unless otherwise required by law or this Charter. (emphasis added)

87. Inkster City Council approval of City Council resolutions 08-22-116R, 09-22-132R, 12-22-173R, 03-23-044R, 04-23-053R, 05-23-069R, and 07-23-106R approving payment for the Schenk and Bruetsch legal invoices which included Defendant Jones's PPO lawsuit against the Plaintiff constitutes official policy of the City.

88. As a direct and proximate result of the execution of the City of Inkster official policy of approving payment to Schenk and Bruetsch PLLC law firm for Defendant Jones's PPO lawsuit against the Plaintiff, the

Plaintiff suffered a deprivation of his constitutional rights as a result of the imposition of the PPO.

89. Specifically, this official policy and legislative enactment by the Inkster City Council led to Schenk and Bruetsch PLLC lawyers drafting motions in support of and appearing at court hearings advocating for Defendant Jones's PPO against the Plaintiff.

90. If the PPO had not been filed against the Plaintiff with the financial backing of Defendant City of Inkster, the Plaintiff would have not suffered a deprivation of his constitutional rights.

91. As a direct and proximate result of the Defendants' violations of the Plaintiffs' rights, the Plaintiffs have sustained damages including (but not necessarily limited to) the following:

    a. Severe mental anguish and distress;
    b. Embarrassment and humiliation;
    c. Fright, shock, and mortification;
    d. Damage to reputation;
    e. Liquidated damages;
    f. Punitive damages;
    g. Exemplary damages
    h. Compensatory damages
    i. economic damages from legal expenses from PPO
    j. nominal damages

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court to enter a judgment in his favor against the Defendants, jointly and severally, awarding him an amount in excess of Seventy-Five Thousand

($75,000) Dollars to which he is entitled for compensatory, exemplary, liquated, and punitive damages; granting him equitable relief; and awarding him costs, and interest so wrongfully incurred.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff requests that the Court enter judgment against Defendant's as follows:

### **A.   LEGAL RELIEF**

1. Compensatory, economic, and noneconomic damages in whatever amount Plaintiff is found to be entitled.

2. Exemplary damages in whatever amount Plaintiff is found to be entitled;

3. Punitive damages in whatever amount Plaintiff is found to be entitled; and

4. Nominal damages

5. An award of interest and costs

### **B.   DECLARATORY & EQUITABLE RELIEF**

1. A permanent injunction from this Court prohibiting any further acts of First Amendment retaliation.

2. A declaratory order that Defendant's Chisholm, Jones, and City of Inkster actions violated the First Amendment

3. An award of interest and costs;

4. Whatever other declaratory and/or equitable relief appears appropriate at the time of final judgment.

Respectfully Submitted,

Dated: November 27th, 2023.

/s/CharlesBlackwell
Charles Blackwell
22655 Fairmont Dr
Apt 102
Farmington Hills, MI, 48335
313-739-3597
cblack618@gmail.com

## **DEMAND FOR JURY TRIAL**

In accordance with Federal Rules of Civil Procedure 38, Plaintiff Blackwell hereby makes his demand for a trial by jury for all issues so triable.

## INDEX OF EXHIBITS

**EXHIBIT A: September 26th, 2022 PPO Hearing Transcript Excerpt (Transcript Page 94).**

**EXHIBIT B: Defendant Jones's Ex Parte PPO Petition**

**EXHIBIT C: Ex Parte PPO Order Against Plaintiff**

**EXHIBIT D: Plaintiff August 7th, 2023, Request for Oral Argument in The Michigan Court of Appeals**

**EXHIBIT E: Unredacted August 2023 City of Inkster Schenk and Bruetsch Legal Invoice**

**EXHIBIT F: DWJ v. CLB, unpublished per curiam opinion of the Court of Appeals, issued November 2nd, 2023 (Docket No. 363324)**

# EXHIBIT A

```
 1              opportunity.  Don't worry, Mr. Bruetsch, I see you
 2              popping up there.
 3                      Mr. Blackwell, is that -- other than
 4              Mr. Jones, do you have any other witnesses you're
 5              going to be calling?
 6                      MR. BLACKWELL:  No, your Honor.
 7                      THE COURT:  All right.  Then we're going to
 8              allow -- one moment.  Off the record.
 9                      (Off the record at 12:51 p.m.)
10                      (Back on the record at 1:06 p.m.)
11                      THE COURT:  We're back on the record in
12              this matter.  Mr. Blackwell has -- go ahead,
13              Mr. Blackwell, you have a question.  Please un-mute.
14                      MR. BLACKWELL:  Yes, your Honor.  I know I
15              had stated that I had rested my case, but I wanted to
16              know could I ask maybe about five more questions?
17                      THE COURT:  You may.
18                      MR. BLACKWELL:  Okay.
19     BY MR. BLACKWELL:
20     Q.      Now, Mr. Jones, you had indicated that Inkster city
21              council member Steven Chisholm was the person who
22              provided you with pictures of firearms on my private
23              Instagram page, is that correct?
24     A.      Yes.
25     Q.      Do you know the timeframe in which -- the date or
```

**EXHIBIT B**

| Approved, SCAO | Original - Court<br>1st copy - Judge/Assignment clerk (green)<br>2nd copy - Respondent (blue) | 3rd copy - Petitioner (pink)<br>4th copy - Return (yellow) |
|---|---|---|

| **STATE OF MICHIGAN**<br>**3rd JUDICIAL CIRCUIT**<br>**WAYNE COUNTY** | **PETITION FOR**<br>**PERSONAL PROTECTION ORDER**<br>**(NONDOMESTIC)** | **CASE NO.** |
|---|---|---|

**Court address**
Coleman A. Young Municipal Center, 2 Woodward Avenue, P.O. Box 8645
Detroit, MI 48226

**Court telephone no.**
(313) 224-5261

(A) Petitioner's name
David W Jones

Age
55

Address and telephone no. where court can reach petitioner
211 W. Fort St., Ste. 1410
Detroit, MI 48226    (313) 774-1000

v

Respondent's name, address, and telephone no.
Charles Lamar Blackwell
22655 Fairmont Dr., Apt. 102
Farmington Hills, MI 48035    (313) 739-3597

Age
29

1. The petitioner and respondent have never been married, resided in the same household together, had a child in common, or had a dating relationship with one another.

(B) 2. ☐ The respondent is required to carry a firearm in the course of his/her employment.    ☐ Unknown.

(C) 3. a. There ☐ are ☒ are not other pending actions in this or any other court regarding the parties.

| Case number | Name of court, county, and state or province | Name of judge |
|---|---|---|
| | | |

b. There ☐ are ☒ are not orders/judgments entered by this or any other court regarding the parties.

| Case number | Name of court, county, and state or province | Name of judge |
|---|---|---|
| | | |

(D) 4. I need a personal protection order because: Explain what has happened (attach separate sheets).
Please see attached "Statement of Facts"

(E) 5. I make this petition under the authority of MCL 600.2950a(1) and ask the court to grant a personal protection order prohibiting the respondent from
☒ a. stalking me as defined by MCL 750.411h and MCL 750.411i, which includes but is not limited to
☒ following me or appearing within my sight.
☒ appearing at my workplace or residence.
☒ approaching or confronting me in a public place or on private property.
☒ entering onto or remaining on property owned, leased, or occupied by me.
☒ sending mail or other communications to me.
☒ contacting me by telephone.
☒ placing an object on or delivering an object to property owned, leased, or occupied by me.
☒ threatening to kill or physically injure me.
☒ purchasing or possessing a firearm.
☐ other: _____
☒ b. posting a message through the use of any medium of communication, including the Internet or a computer or any electronic medium, pursuant to MCL 750.411s.

(F) ☒ 6. I request an ex parte order because immediate and irreparable injury, loss, or damage will occur between now and a hearing or because notice itself will cause irreparable injury, loss, or damage before the order can be entered.

(G) ☐ 7. I have a next friend petitioning for me. I certify that the next friend is not disqualified by statute and is an adult.

(H) July 21, 2022
Date

/s/ David W Jones
Petitioner's/Next friend's signature

(e-signed pursuant to MCR 1.109)

CC 377  (6/19)  **PETITION FOR PERSONAL PROTECTION ORDER (NONDOMESTIC)** SRL    MCL 600.2950a, MCR 3.703

<table>
<tr><td>**Petition for Personal Protection Order (Nondomestic)**</td></tr>
<tr><td>Case No.</td></tr>
</table>

## STATEMENT OF FACTS

4. (Continued)

The parties' relationship is as follows: Stranger.

a. One incident of stalking or other threatening behavior by Charles Lamar Blackwell occurred on or about July 18, 2022 at the following location: City of Inkster, City Council Chambers; 26215 Trowbridge St. Inkster, MI 48141.

At that time, Charles Lamar Blackwell said or did the following: Charles Blackwell appeared at the Inkster City Council Meeting where i was required to be in my job as the Inkster City Attorney. He appeared with a large poster board sign which depicted the Mayor of the City of Inkster lying in a bed with my wife, Kenyetta Stanford Jones (Judge of the 36th District Court). After he was unable to garner any reaction from me or the Mayor, he provoked a confrontation with me and called me a "chump". Mr. Blackwell is known to be armed with one or more weapons at all times and he has engaged in a habit of appearing either in person, or virtually at my places of employment and engaged in repeated harassments and ridicule. .

As a result of this incident I felt Concerned for my safety because Blackwell is known to be armed, he provoked a confrontation, he has a violent history and he appears to have an irrational obsession with me. .

There were witnesses to the incident.

The police were called and did the following: Police were present and advised Blackwell that if continued to make a disturbance, he would have to leave the public meeting. .

b. Another incident of stalking or other threatening behavior by Charles Lamar Blackwell occurred on or about June 22, 2022 at the following location: City of Detroit, Board of Ethics Office.

At that time, Charles Lamar Blackwell said or did the following: On this date, Blackwell sent an email to the Board of Ethics (where I volunteer as a Board Member) with a picture depicting me and Detroit Mayor Mike Duggan in a compromising embrace.

I know the Respondent was responsible for the behavior because: Blackwell has admitted using aliases in pleadings filed in Michigan court pleadings. He has engaged in this behavior for more than two years. .

As a result of this incident I felt Because of this incident I felt harassed, embarrassed, ridiculed and humiliated.

There were witnesses to the incident.

c. Another incident of stalking or other threatening behavior by Charles Lamar Blackwell occurred on or about May 20, 2022 at the following location: Detroit Board of Ethics in the City of Detroit.

At that time, Charles Lamar Blackwell said or did the following: On or about May 20, 2022, Blackwell sent an email to the Board of Ethics staff depicting me and Board of Ethics Chair, Kristin Lusn in a compromising photo in a bed.

I know the Respondent was responsible for the behavior because: This behavior is consistent with the harassment' I have experience from Blackwell for over two years. .

As a result of this incident I felt Embarrassed, humiliated, ridiculed and harassed. .

There were witnesses to the incident.

d. Another incident of stalking or other threatening behavior by Charles Lamar Blackwell occurred on or about May 18, 2022 at the following location: Detroit Board of Ethics, Detroit office.

At that time, Charles Lamar Blackwell said or did the following: Blackwell virtually (continued on next page)

| Petition for Personal Protection Order (Nondomestic) |
|---|
| Case No. |

## STATEMENT OF FACTS

4. (Continued)

signed on to the public meeting of the Board of Ethics and he published a picture of me with a woman's body. .
I know the Respondent was responsible for the behavior because: Consistent with Blackwell's harassment of me for the last two years. .

As a result of this incident I felt Embarrassed, humiliated, harassed and ridiculed. .

There were witnesses to the incident.

e. Another incident of stalking or other threatening behavior by Charles Lamar Blackwell occurred on or about August 2020 - present date at the following location: The public meetings of the Inkster City Council, the Detroit Board of Ethics and the Michigan Indigent Defense Commission. .

At that time, Charles Lamar Blackwell said or did the following: Several public comments disparaging my character, name calling, ridicule and questioning my integrity.

I know the Respondent was responsible for the behavior because: His voice is known to me.

As a result of this incident I felt Embarrassed, humiliated, ridiculed and harassed. .

There were witnesses to the incident.

f. I would also like the Court to know:

Blackwell has exhibited an irrational obsession with me. He has appeared at nearly every public meeting that I am required to attend as a result of my job and/or appointments and usually uses his opportunity to speak during the public comment section of the meeting to ridicule, embarrass or harass me. Blackwell took his harassment to another level on July 18, 2022 when he provoked me not only with a defamatory picture of my wife, but also by calling me out of my name as I walked by him. Blackwell is known to attend public meetings while heavily armed and he is known to possess and own firearms. Blackwell also has a violent history (he was paralyzed in 2014) he was involved in a shooting in which it was hypothesized that he was a suspect. The following Exhibits document the allegations contained in this paragraph:

Exhibit A - Blackwell's defamatory picture of my wife with Mayor Wimberly
Exhibit B - Blackwell's defamatory pictures of me published to my clients
Exhibit C - 2014 Detroit Police Department Reports documenting the shooting in which Blackwell was involved
Exhibit D - Blackwell's social media post boasting of his firearms
Exhibit E - Blackwell's emails acknowledging his intent to travel to Inkster whiled armed

**EXHIBIT C**

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | PERSONAL PROTECTION ORDER (NONDOMESTIC) ☐ EX PARTE | CASE NO. 22-108559-PH |
|---|---|---|
| Court address 1801 CAYMC, 2 Woodward Ave., Detroit, MI 48226 | ☐ CORRECTED | Court telephone no. (313)224-0120 |

ORI
MI-

| Petitioner's name | Respondent's name, address, telephone no. |
|---|---|
| David W Jones | Charles Lamar Blackwell |
| Address and telephone no. where court can reach petitioner | Address and telephone no. where court can reach petitioner |
| 211 W Fort ST STE 1410 | 22655 Fairmont DR APT 102 |
| Detroit, MI 48226 | FARMINGTON HILLS, MI 48335 |
| Cell: 313-774-1000 | Cell: 313-739-3597 |

v

| Full name of respondent (type or print) * | | | | | | | Driver's license number (if known) |
|---|---|---|---|---|---|---|---|
| Charles Lamar Blackwell | | | | | | | |
| Height | Weight | Race* | Sex* | DOB or age* | Hair color | Eye color | Other identifying information |
| 5 Ft. 9 In. | 180 Lbs. | Black | Male | 6/18/1993 | Black | Brown | |

*These items **must** be filled in for the police/sheriff to enter on LEIN; the other items are not required but are helpful.

| Date: 7/22/2022 | Judge: Mary Beth Kelly | P40646 |
|---|---|---|
| | | Bar no. |

1.   This order is entered ☒ without a hearing.  ☐ after hearing.

**THE COURT FINDS:**

☒ 2.   A petition requesting an order to restrain conduct prohibited under MCL 750.411h and MCL 750.411i and/or MCL 750.411s has been filed under the authority of MCL 600.2950a.

☒ 3.   Petitioner requested an ex parte order, which should be entered without notice because irreparable injury, loss, or damage will results from the delay required to give notice or notice itself will precipitate adverse action before the order can be issued.

4.   Respondent committed the following acts of willful, unconsented contact: (State the reasons for issuance.)

**IT IS ORDERED:**

5.   Charles Lamar Blackwell _____ is prohibited from
       Full name of respondent

   ☐   a. stalking as defined under MCL 750.411h and MCL 750.411i that include but not limited to:
   - ☐ following or appearing within sight of the petitioner.
   - ☒ appearing at the workplace or the residence of the petitioner.
   - ☒ approaching or confronting petitioner in a public place or on private property.
   - ☒ entering onto or remaining on property owned, leased, or occupied by petitioner.
   - ☒ sending mail or other communications to the petitioner.
   - ☒ contacting the petitioner by telephone.
   - ☒ placing an object on or delivering an object to property owned, leased, or occupied by petitioner.
   - ☒ threatening to kill or physically injure the petitioner.
   - ☒ purchasing or possessing a firearm.
   - ☐ other:

   ☒   b. posting a message through the use of any medium of communication, including the internet or a computer or any electric medium, pursuant to MCL 750.411s.

6.   Violation of this order subjects the respondent to immediate arrest and to the civil and criminal contempt powers of the court. If found guilty, respondent shall be imprisoned for not more than 93 days and may be fined not more than $500.00.

7.   **This order is effective when signed, enforceable immediately, and remains in effect until** 7/22/2023 .
       This order is enforceable anywhere in this state by any law enforcement agency when signed by a judge, and upon service, may also be enforced by another state, and Indian tribe, or a territory of the United States. If respondent violates this order in a jurisdiction other than this state, respondent is subject to enforcement and penalties of the state, Indian tribe, or United States territory under whose jurisdiction the violation occurred.

8.   The court clerk shall file this order with   MSP/DPD _____ who will enter it into the LEIN.

9.   Respondent may file a motion to modify or terminate this order. For ex parte orders, the motion must be filed within 14 days after being served with or receiving actual notice of the order. Forms and instructions are available from the clerk of the court

10.   A motion to extend the order must be filed 3 days before the expiration date in item 7 or a new petition must be file.

| **07/22/2022** | | P40646 |
|---|---|---|
| Date and time issued | Judge | Bar no. |

Mary Beth Kelly

CC 380 (3/12) **PERSONAL PROTECTION ORDER (NONDOMESTIC)**            MCL 600.2950a, MCR 3.705, MCR 3.706

**EXHIBIT D**

 Gmail

**Charles Blackwell <cblack618@gmail.com>**

## MiFILE: Service Notification - MI Court of Appeals - Case No. 363324

**info@truefiling.com** <info@truefiling.com>
To: cblack618@gmail.com

Mon, Aug 7, 2023 at 9:22 AM

The following document(s), filed in the **MI Court of Appeals**, are being electronically served on you for case **363324** by **Charles Blackwell.**

Document Title: Request for Remote Oral Argument

Link: Click to download document
Or Copy and Paste: https://mifile.courts.michigan.gov/openfiling/0f70b904-5ce7-413a-6a59-08db91362c64/recipient/3f16e0f8-58cc-401a-72d4-08db91362ca5/download

Proof of Service: Link
Or Copy and Paste: https://mifile.courts.michigan.gov/filing/0f70b904-5ce7-413a-6a59-08db91362c64/proofofservice

The following people were electronically served the above document(s):

- Charles Blackwell - e-Serve cblack618@gmail.com
- Nicole Miller - e-Serve nicole.miller@sbdetroit.com
- Philip Ellison - e-Serve pellison@olcplc.com
- Thomas Bruetsch - e-Serve thomas.bruetsch@sbdetroit.com

*****This e-mail was sent from an unattended e-mail mailbox. Replies to this e-mail will be rejected. *****

_____

MiFILE is the Michigan judiciary's electronic-filing system for filing and serving documents online. This system is available 24 hours a day, 7 days a week.

Home page: https://mifile.courts.michigan.gov/

CONFIDENTIALITY NOTICE: This message and any associated documents have been sent via MiFILE and may contain confidential information. The information is intended for individuals or legally defined interested persons associated with the case to which this message applies. Any individual not associated with the case is prohibited from disseminating, distributing, or copying this message or any associated documents, downloading the associated documents, or taking any action on the contents of this message or any associated documents. If you have received this communication in error, please delete the message immediately. Thank you.

# EXHIBIT E



# INVOICE

Invoice # 15422
Date: 09/05/2023
Due Upon Receipt

211 W. Fort Street, Suite 1410
Detroit, Michigan 48226
United States

City of Inkster

## Blackwell, Charles (False Imprisonment)

## Blackwell, Charles (False Imprisonment)

| Date | Attorney | Notes | Quantity | Rate | Total |
|------|----------|-------|----------|------|-------|
| 08/01/2023 | DJ | Receipt and review FOIA RE☐UES☐ from Blackwell. | 0.20 | $225.00 | $45.00 |
| 08/07/2023 | ☐PB | Review notice from court of appeals. | 0.25 | $385.00 | $96.25 |

|  |  |  |  | **Subtotal** | **$141.25** |
|--|--|--|--|--------------|-------------|
|  |  |  |  | **Total** | **$141.25** |

## Detailed Statement of Account

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|----------------|--------|------------|-------------------|-------------|
| 15422 | 09/05/2023 | $141.25 | $0.00 | $141.25 |

|  |  |  | **Outstanding Balance** | **$141.25** |
|--|--|--|-------------------------|-------------|
|  |  |  | **Total Amount Outstanding** | **$141.25** |

Please make all amounts payable to: Schenk & Bruetsch
Please note processing fee of 3.5% will be added to all payments made by American Express and a processing fee of 3% will be added for all other credit card payments.

Payment is due upon receipt.

**EXHIBIT F**

*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

DWJ,

           Petitioner-Appellee,

v

CLB,

           Respondent-Appellant.

UNPUBLISHED
November 2, 2023

No.  363324
Wayne Circuit Court
Family Division
LC No.  22-108559-PH

---

Before:  LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Petitioner, the city attorney for the city of Inkster, obtained an ex parte personal protection order against respondent, who moved to have it terminated on the ground that all the complained of conduct was constitutionally protected speech.  The trial court denied the motion, holding that respondent's repeated conduct of showering petitioner with offensive commentary, while sometimes displaying critical caricatures of petitioner, both in-person and electronically, constituted stalking.  The court also held that respondent's communications were not constitutionally protected expression because they violated petitioner's "right to be left alone." Respondent appeals as of right.  We reverse.

## I.  BACKGROUND

Respondent is a private citizen who has often engaged petitioner, a city attorney, through e-mail and at public meetings, to express his opinion of petitioner's job performance through insulting utterances and displays of petitioner's face in unflattering and embarrassing settings. Petitioner testified that respondent first contacted him by e-mail at his work address in January 2020 after petitioner denied one of respondent's Freedom of Information Act (FOIA)[1] requests. Thereafter, respondent filed many additional FOIA requests and lawsuits.  According to respondent, petitioner "began a pattern of appearing at the public meetings and ridiculing myself,

---

[1] MCL 15.231 *et seq.*

ridiculing my clients, depicting me, along with elected officials in defamatory and pornographic" ways. Petitioner sought the protective order after respondent appeared at a city council meeting with a poster depicting petitioner's wife disparaging him to the mayor, while their heads were resting on pillows. Petitioner alleged that respondent then called him a "chump" when petitioner walked near him, and that he thought that respondent was armed because he had informed officials that he would exercise his permit to carry a concealed weapon during public meetings and then appeared with a small tote bag on his body.

On July 22, 2022, the trial court issued an ex parte personal protection order on behalf of petitioner against respondent. On October 7, 2022, another trial court judge denied respondent's motion to terminate the PPO, holding that respondent's repeated conduct of displaying critical caricatures of petitioner, with commentary, to petitioner, both in-person and electronically, constituted stalking. The trial court further held that respondent's communications were not protected by the First Amendment because they violated petitioner's "right to be left alone." Respondent now appeals as of right.

## II.  STANDARDS OF REVIEW

This Court reviews a trial court's decision regarding whether to issue, or terminate, a PPO for an abuse of discretion. See *TT v KL*, 334 Mich App 413, 438; 965 NW2d 101 (2020). The trial court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). The trial court's findings of fact are reviewed for clear error. *Berryman v Mackey*, 327 Mich App 711, 717; 935 NW2d 94 (2019). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*. at 717-718.

This Court reviews constitutional questions de novo. *TM v MZ (On Remand)*, 326 Mich App 227, 236; 926 NW2d 900 (2018).

## III.  CONSTITUTIONALLY PROTECTED SPEECH

The purpose of personal protection orders is to protect individuals "who are maliciously followed, harassed, or intimidated by stalkers." *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 721; 691 NW2d 1 (2005). A petition for a PPO is governed by the court rules except as otherwise provided in MCL 600.2950 and MCL 600.2950a. *TT*, 334 Mich App at 439. MCL 600.2950a is the nondomestic PPO statute, which "addresses stalking behavior or conduct that is not limited to certain existing relationships."

In a motion to terminate an ex parte PPO, the petitioner bears the burden of persuasion. *TM*, 326 Mich App at 236. A court may not grant a nondomestic PPO "unless the petition alleges facts that constitute stalking as defined in section 411h or 411i, or conduct that is prohibited under section 411s, of the Michigan penal code." MCL 600.2950a(1). In this case, the trial court stated that "[p]etitioner testified to [a] course of conduct of stalking and repeated unconsented contact by Respondent which caused him to feel emotional distress, terrorized, frightened, intimidated, threatened and harassed," citing MCL 750.411h(1)(d) and MCL 750.411h(1)(a).

At the hearing on the motion to terminate the PPO, petitioner testified that he denied respondent's initial FOIA request, that respondent filed subsequent FOIA requests and lawsuits, and he described respondent's pattern of appearing at public meetings, including some that were not of the city council, for approximately one year.  According to petitioner, respondent commented negatively about petitioner's job performance at every meeting petitioner attended. Petitioner testified about, and presented numerous exhibits to show, respondent's "constant," "weekly, sometimes daily," e-mails to petitioner, beginning in June 2020, some of which were also sent to members of petitioner's law firm or other public officials, which typically included depictions of petitioner's face superimposed on the body of another person or animal in an offensive way, along with statements disparaging petitioner's competence or personal characteristics.

Respondent does not dispute petitioner's assertions regarding the authenticity, frequency, tone, or contents of his communications, but argues that "everything the appellee alleged in his petition and/or ruled on by the trial court in its opinion and order is constitutionally protected speech and activity."  We agree.

The First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . . ."  The Michigan Constitution provides that "[e]very person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech."  Const 1963, art 1, § 5.  Speech over the Internet is constitutionally protected " 'to the same extent as speech over other media.' "  *TM*, 326 Mich App at 237, quoting *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 256, 833 NW2d 331 (2013).  However, "the freedom of speech is not absolute," and such "well-defined and narrowly limited" classes of speech as "obscenity, defamation, fraud, incitement, and speech integral to criminal conduct" may be suppressed without offending constitutional principles.  *Buchanan v Crisler*, 323 Mich App 163, 181-182; 922 NW2d 886 (2018) (cleaned up).

The extent to which respondent's offensive speech targeting petitioner was protected is dependent on petitioner's characterization as either a public or private figure.  The trial court did not make an explicit determination in this regard.  On appeal, respondent takes the position that petitioner was a public figure, and petitioner argues otherwise.

"Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures and those who hold governmental office may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth."  *Gertz v Robert Welch, Inc*, 418 US 323, 342; 94 S Ct 2997; 41 L Ed 2d 789 (1974).  A person who has acquired "pervasive fame or notoriety" may become a public figure "for all purposes and in all contexts."  *Id.* at 351.  However, "[m]ore commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.  In either case such persons assume special prominence in the resolution of public questions."  *Id.*  Also bearing on the question is that MCL 750.478a(7)(d)(*ii*) defines "public officer" as a person "elected or appointed" to a "public office of a city, village, township, or county in this state."  Not in dispute is that, at the time relevant, petitioner held municipal appointments as Inkster's city attorney, and as a member of the City of Detroit Board

of Ethics.  We conclude, as a matter of law, that, in light of the obvious focus of the speech at issue on matters of public interest relating to local politics, and of petitioner's statutorily recognized status as a public officer, petitioner was a public figure for present purposes.

The trial court held that respondent's political commentary toward petitioner lost constitutional protection because it infringed on petitioner's "right to be left alone," explaining as follows:

> When balancing the right of every person to be let alone with the balancing of the right of others to communicate, this Court finds that Petitioner's right to be left alone has been compromised.  See *Hill v Colorado*, 530 US 703, 717; 120 Ct 2480; 147 Ed 2d 597 (2000).  The right to be let alone is that right which the PPO statute seeks to protect, by criminalizing stalking except where the conduct is constitutionally protected.  Here, Respondent's direct targeting of Petitioner, . . . which Respondent acknowledged doing at the hearing held on August 4, 2022, lost its protected character.

In *Hill*, 530 US at 707, the United States Supreme Court considered a state statute that prohibited, within 100 feet of the entrance to any healthcare facility, "any person to 'knowingly approach' within eight feet of another person, without that person's consent, 'for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person . . . .' "  The Court discussed the lack of constitutional protection for speech that "is so intrusive that the unwilling audience cannot avoid it," which follows from the "right to be let alone," which includes the "right to avoid unwelcome speech."  *Id*. at 716-717.  In holding that the statute did not violate the First Amendment, the Court balanced the "substantial" right of "freedom to communication" with the rights "to be let alone" and to "passage without obstruction," and concluded that the statute applied to only "communications that interfere with" the latter rights.  *Id*. at 718-719.  However, the Court stressed that the statute "simply establishes a minor place restriction," leaving protesters free "to educate unwilling listeners on any subject" as long as they "not approach within eight feet to do so."  *Id*. at 723.

The instant case is distinguishable from *Hill*, which considered a content-neutral state law, rather than overtly offensive speech.  The parties have presented no binding cases that apply a "right to be left alone" to overcome constitutional protections in the context of a PPO.  The *Hill* Court recognized that the "common-law 'right' " to be left alone "is more accurately characterized as an 'interest' that States can choose to protect in certain situations."  *Id*. at 717 n 24, citing *Katz v United States*, 389 US 347, 350-351; 88 S Ct 507; 19 L Ed 2d 576 (1967).  The Court further clarified that "whether there is a 'right' to avoid unwelcome expression" was not at issue in that case, because the subject statute existed "not to protect a potential listener from hearing a particular message," but "to protect those who seek medical treatment from the potential physical and emotional harm suffered when an unwelcome individual delivers a message (whatever its content) by physically approaching an individual at close range."  *Hill*, 530 US at 718 n 25.  Additionally, in this case, the PPO largely targeted e-mail messages, which were not unavoidable insofar as they may be left unopened or possibly even blocked.  We therefore conclude that, in prioritizing petitioner's interest in being let alone over respondent's constitutional right to communicate an

-4-

opinion on public concerns to public officials, even in ways that are offensive, crude, or childish, the trial court applied the holding of *Hill* too broadly.

When online messages are posted "solely" to "harass a private victim in connection with a private matter," that activity may be enjoined by PPO, but when "the information relates to a public figure and an important public concern," a PPO may not be issued to restrict the speech. *Buchanan*, 323 Mich App at 188-189. "[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Id*. at 189 (cleaned up). Speech may not be prohibited because it is "offensive or disagreeable," or regulated on the basis of whether its message is favored or disapproved. *TM*, 326 Mich App at 238 (citation omitted). "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Buchanan*, 323 Mich App at 190 (cleaned up). In weighing whether to issue a PPO, a trial court should "take into consideration the totality of the circumstances." *Patterson v Beverwyk*, 320 Mich App 670, 688; 922 NW2d 904 (2017).

In determining whether a PPO is necessary, a trial court may consider the petition, along with "testimony, documents, and other evidence proffered." *Lamkin v Engram*, 295 Mich App 701, 711; 815 NW2d 793 (2012). In this case, respondent's messages were to petitioner, and sometimes other public officials, commenting on petitioner's competence in the performance of his public duties. The caricatures, or cartoons, that respondent conveyed contained statements relating to only matters of public concern. Thus, the messages were protected commentary about public officials and public matters.

This Court has recognized the need to determine "whether postings involve a matter of public concern or whether the postings are a thinly veiled attempt to immunize a private harassment campaign as a matter of public concern." *Buchanan*, 323 Mich App at 190-191. In this case, however, the messages at issue generally did not stray from communications through official channels concerning respondent's competence in, or fitness for, public office.

Conduct that is constitutionally protected may not be considered harassment, and thus may not be considered stalking. *Nastal*, 471 Mich at 723; *Lamkin*, 295 Mich App at 711. See also MCL 750.411h(1)(c) ("Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose."). MCL 750.411s "does not prohibit constitutionally protected speech or activity." MCL 750.411s(6). "MCL 750.411s may not be employed to prevent speech relating to public figures on matters of public concern." *Buchanan*, 323 Mich App at 191. See also *TT*, 334 Mich App at 447.

However, as stated, constitutional expressive rights are not absolute, and the categories of speech that are not protected include "defamation, fighting words, words inciting imminent lawless action, and true threats." *TM*, 326 Mich App at 243.

"Fighting words include those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction . . . ." *TM*, 326 Mich App at 238 (cleaned up).  Petitioner argues that respondent's actions of bringing a poster of the heads of petitioner's wife and the mayor next to each other on pillows, with a representation that his wife was telling the mayor that petitioner was a poor city attorney, and also calling petitioner a "chump" as petitioner walked by, were designed to elicit a confrontation, and thus that those gestures constituted fighting words.  Because the trial court held that respondent's communications were not constitutionally protected for other reasons, it did not consider the fighting-words exception.  We, however, are satisfied that the undisputed facts establish that there were no fighting words in this situation.

We agree with petitioner that depicting petitioner's wife, apparently in bed with another man, to communicate that respondent thought that petitioner was performing poorly, was distasteful and provocative, as was calling him "chump" while the two were in proximity. However, the "rhetorical hyperbole and imaginative expression often found in satires, parodies, and cartoons," even when intended to be highly offensive to the target, should not be interpreted as factual recitations.  *Ghanam v Does*, 303 Mich App 522, 545-546; 845 NW2d 128 (2014). Casual use of such epithets as "chump" in the context of public comments are typical of the exaggerated nature of "core political speech."  *Id*. at 546.  The situation in which respondent insulted petitioner through invoking his wife was not "inherently likely to provoke violent reaction," considering that he communicated the message in a public political forum with law-enforcement officers present.   Further, the offending epithet and graphic display did not significantly depart from respondent's routine e-mailed political insults or provocations, and was not likely to be taken more seriously simply because respondent used petitioner's wife as a prop to convey his disparaging sentiments.  We hold that respondent's poster and actions were tasteless, boorish, and offensive, but did not reach the level of being "inherently likely to provoke violent reaction" in an ordinary person.

In sum, because respondent's speech was constitutionally protected, the trial court erred as a matter of law in finding that it violated petitioner's right to be left alone, and thus abused its discretion by denying respondent's motion to terminate the PPO.[2]

---

[2] Respondent also argued that the court erred by denying his motion to terminate the PPO because the judge who issued the ex parte PPO did not provide any written reasons for its issuance, as required by MCR 3.705(A)(2) and MCL 600.2950a(7).  We agree that the PPO was not in conformity with MCL 600.2950a(7).  But the procedural objection became moot when the trial court agreed with petitioner's argument that the purpose of the motion hearing was to determine whether petitioner had demonstrated a need for a PPO.  Further, the trial court issued an opinion and order following an evidentiary hearing detailing the reasons for upholding the PPO, which cured, or rendered harmless, the issuing judge's error.  See *Nahshal v Fremont Ins Co*, 324 Mich App 696, 717; 922 NW2d 662 (2018) (holding that an error is considered harmless when "based on review of the entire record, it is more probable than not that the error was not outcome determinative.").

Reversed and remanded for entry of an order consistent with this opinion.  We do not retain jurisdiction.


/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel

JS 44 (Rev. 10/20) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Blackwell, Charles, L.

**DEFENDANTS**
Chisholm, Steven, A.
Jones, David, W.
City of Inkster

**(b)** County of Residence of First Listed Plaintiff    Oakland
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Wayne
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question *(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983
Brief description of cause:
First Amendment Retaliation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ 75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
November 27, 2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

PURSUANT TO LOCAL RULE 83.11

1.　　　　　Is this a case that has been previously dismissed?　　　　☐ Yes
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　■ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.　　　　　Other than stated above, are there any pending or previously
　　　　　　discontinued or dismissed companion cases in this or any other　　☐ Yes
　　　　　　court, including state court? (Companion cases are matters in which　■ No
　　　　　　it appears substantially similar evidence will be offered or the same
　　　　　　or related parties are present and the cases arise out of the same
　　　　　　transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :