UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES LAMAR BLACKWELL,

      Plaintiff,

v.

STEVEN CHISHOLM, DAVID JONES,
and CITY OF INKSTER,

      Defendants.

_____/

Case No. 2:23-cv-13015
District Judge Mark A. Goldsmith
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION TO DENY DEFENDANTS' MOTION TO DISMISS (ECF No. 21)[1]

### I.     Introduction

This is a civil rights case under 42 U.S.C. § 1983. Plaintiff Charles Lamar Blackwell (Blackwell), proceeding *pro se*, is suing the City of Inkster (Inkster), Inkster city council member Steven Chisholm (Chisholm), and Inkster city attorney David Jones (Jones) for First Amendment retaliation. (ECF No. 17). Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 7).

---

[1] Upon review of the motion, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

1

Before the Court is defendants' motion to dismiss the amended complaint, [2] (ECF No. 21). The motion is fully briefed, (ECF Nos. 24, 25, 27, 28-1), and ready for consideration. For the reasons that follow, it is RECOMMENDED that defendants' motion to dismiss be DENIED.

## II.     Background

When considering a motion to dismiss, the undersigned considers the factual allegations of the amended complaint as true, *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012), and summarizes them below.

In broad terms, Blackwell alleges that his First Amendment rights were infringed when Jones obtained an ex parte personal protection order (PPO) against him, with Inkster paying Jones' legal fees. (ECF No. 21). Blackwell moved to have the PPO terminated, but the trial court denied his motion. (ECF No. 17-9, PageID.160). Blackwell appealed that decision, and on November 2, 2023, the Michigan Court of Appeals issued an unpublished opinion reversing the trial court's ruling, holding that the PPO infringed on Blackwell's First Amendment

---

[2] Blackwell filed his original complaint on November 27, 2023, (ECF No. 1), and an amended complaint by right on January 30, 2024, (ECF No. 17). On January 29, 2024, defendants filed a motion to dismiss the original complaint, (ECF No. 14), in lieu of filing an answer to the complaint. The next day, on January 30, 2024, Blackwell filed the amended complaint. (ECF No. 17). On April 10, 2024, the undersigned issued a Report and Recommendation recommending that defendants' January 29, 2024 motion to dismiss be denied as moot. (ECF No. 29). The district court adopted this recommendation on May 7, 2024. (ECF No. 30).

rights.  (*Id.*, PageID.160-166).  The matter was remanded to the trial court for entry of an order terminating the PPO.  (*Id.*, PageID.166).  The Michigan Supreme Court denied Jones' application for leave to appeal.  (ECF No. 31, PageID.345).

Blackwell says that Jones was appointed as the city attorney for Inkster on March 7, 2022, by a five-to-one vote of the Inkster city council.  (ECF No. 17, PageID.112).  On July 18, 2022, Blackwell attended a city council meeting in person, holding a poster board of a politically satirical nature.  (*Id.*, PageID.114). The poster depicted Jones' wife lying in bed next to the mayor of Inkster with a caption reading, "You don't have to remind me.  I already know David Jones is A Bad Inkster City Attorney."  (*Id.*, PageID.114-115).  Blackwell also expressed criticism of Jones at the meeting and called him a "chump."  (*Id.*, PageID.115).

The following day, Chisholm used his official city council Instagram account and government email address to send Jones pictures Blackwell had posted containing firearms.  (*Id.*).  Although the firearms were legally owned, these pictures were provided to help Jones obtain a PPO against Blackwell.  (*Id.*).  The pictures were innocuous and non-threatening, and Chisholm had access to them because his account followed Blackwell's private Instagram account where the pictures were posted (pictures posted to a private account can only be seen by that account's approved followers).  Jones did not follow Blackwell's account and would not have had personal access to the pictures.  (*Id.*, PageID.116-117).  Jones

later submitted a billing invoice to Inkster for his services as city attorney. (*Id.*, PageID.126).

On July 21, 2022, Jones petitioned for an ex parte PPO against Blackwell. (*Id.*, PageID.119-120). The petition included the pictures from Blackwell's Instagram account. (*Id.*, PageID.120). Jones worked on the PPO petition from the same office in which he conducts business for Inkster and included the time spent on the petition in his invoice to Inkster.[3] (*Id.*). Thus, Inkster used public funds to pay Jones for his drafting and preparing the PPO petition against Blackwell. (*Id.*, PageID.121). The court granted Jones' petition, and the issuance of the PPO resulted in Blackwell losing his firearms, being unable to attend city council meetings in person, and leaving him with no means to express speech to Jones. (*Id.*).

On July 25, 2022, Blackwell filed a motion to terminate and rescind the PPO, alleging infringement on his constitutionally protected speech. (*Id.*). The trial court denied Blackwell's motion. (*Id.*). On October 11, 2022, Blackwell appealed the trial court's ruling to the Michigan Court of Appeals. (*Id.*, PageID.123).

---

[3] Jones appears to have been paid a flat fee of $6,000 per month for his services as city attorney; however, Jones itemized his time spent on individual tasks, one of which was reviewing a July 19, 2022 email from Chisholm. (ECF No. 17-4, PageID.147).

Blackwell alleges that during these proceedings, the Inkster city council utilized "closed sessions" under the Michigan Open Meetings Act to covertly discuss Jones' PPO and approve expenditure of public funds to pay for Jones' PPO-related legal costs. (*Id.*). Another attorney from Jones' firm was hired to represent Jones at the trial and appellate level in defense of Jones' PPO and was paid by Inkster for his representation. (*Id.*, PageID.122). Blackwell appeared in at least one invoice from Jones' firm to Inkster, with a misleading entry of "false imprisonment," which does not accurately reflect any action taken by Blackwell, Jones, or Inkster. (*Id.*, PageID.123-124). Blackwell's only active legal case was his appeal of the PPO decision, meaning that any bill referencing Blackwell was related to the PPO litigation. (*Id.*, PageID.125-126). Because the city council approved Jones' invoices at every relevant monthly meeting in 2022 and 2023, where such invoices contained bills related to Blackwell, Blackwell concludes that Inkster had a policy, practice, or custom of financially funding Jones' PPO litigation against Blackwell. (*Id.*, PageID.126-129).

On November 2, 2023, the Michigan Court of Appeals reversed the trial court's decision regarding Jones' PPO, holding that Blackwell's speech was constitutionally protected. (*Id.*, PageID.129; ECF No. 17-9, PageID.160-166); *see DWJ v. CLB*, No. 363324, 2023 WL 7270488, at *3 (Mich. Ct. App. Nov. 2, 2023), *appeal denied*, 6 N.W.3d 367 (Mich. 2024). In its decision, the court of

appeals explained that it considered Jones to be acting as a public figure at all relevant times.  (ECF No. 17, PageID.130; ECF No. 17-9, PageID.162-163).  The Michigan Supreme Court denied Jones' application for leave to appeal.  (ECF No. 17, PageID.130; ECF No. 31, PageID.345).

Based on these allegations, Blackwell claims that Chisholm and Jones are personally liable for First Amendment retaliation and that Inkster is liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) for the same constitutional deprivation.

### III.    Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys*, 684 F.3d at 608.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

6

misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by pro se parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented ... nor may courts construct the Plaintiff's legal arguments for him.... [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

Finally, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies may be appended to a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007); *see also Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); *Weiner v. Klais & Co., Inc.*, 108 F.3d 86,

89 (6th Cir. 1997).[4]

## IV.    Discussion

### A.    Section 1983 Claims

"Section 1983 makes 'liable' '[e]very person' who 'under color of' state law 'subjects, or causes to be subjected,' another person 'to the deprivation of any rights, privileges, or immunities secured by the Constitution[.]' " *Rudd v. Norton Shores*, 977 F.3d 503, 512 (6th Cir. 2020) (quoting 42 U.S.C. § 1983) (alteration in original).  Section 1983's provision creating a cause of action for deprivation of rights "protects against acts attributable to a State, not those of a private person." *Lindke v. Freed*, 601 U.S. 187, 194 (2024).  To make out a claim under 42 U.S.C. § 1983, "a plaintiff must identify a right secured by the U.S. Constitution and a deprivation of that right by a person acting under color of law."  *Straub v. Kilgore*, 100 F. App'x 379, 385 (6th Cir. 2004).  Therefore, to state a claim under 42 U.S.C. § 1983, Blackwell must allege first that he suffered a deprivation of a constitutional right and then that the individual defendant(s) who caused that deprivation did so while acting under color of state law.  *See Rudd*, 977 F.3d at

---

[4] Blackwell filed a request that the Court take judicial notice of the Michigan Supreme Court's denial of leave to appeal a Michigan Court of Appeals ruling at the center of this case.  (ECF No. 31).  This request is granted as court decisions are matters of public record that can be considered on a motion to dismiss.  *See Tellabs*, *Greenberg*, *Weiner*, *supra*.

8

512. "An individual acts 'under color of law' when exercising 'power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *Blackwell v. Allen*, No. 21-CV-12284, 2022 WL 791408, at *3 (E.D. Mich. Mar. 14, 2022) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 317-318 (1981)) (punctuation modified in original), *aff'd*, 2022 WL 17832191 (6th Cir. Dec. 21, 2022).

## B.     First Amendment Retaliation

Blackwell alleges that Jones and Chisholm acted in a "coordinated effort" to retaliate against his protected speech criticizing Jones in Jones' role as city attorney for Inkster.

### 1.     Standard

" '[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  A First Amendment retaliation claim has three elements:

(1) the plaintiff engaged in protected conduct;

(2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and

(3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's

protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

As for the third element, "to prove causation it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured." *Coleman v. Mohlman*, No. 2:19-cv-13494, 2020 WL 5648352, at *6 (E.D. Mich. Aug. 24, 2020) (citing *Nieves*, 587 U.S. at 398), *report and recommendation adopted*, 2020 WL 5645715 (E.D. Mich. Sept. 22, 2020).  "The retaliatory motive must be a 'but-for' cause to the adverse action." *Id.* at *6 (citing *Nieves*, 587 U.S. at 399).

## 2.    Protected Conduct

Blackwell alleges that he "engaged in constitutionally protected speech by calling Defendant Jones a 'chump' and carrying a political satire poster board at the July 18th, 2022, Inkster City Council meeting."  (ECF No. 17, PageID.132).  It is well-settled that "criticism of government is at the very center of the constitutionally protected area of free discussion." *Rudd*, 977 F.3d at 514 (cleaned up). "The freedom of speech … protects the right of an ordinary citizen to criticize public officials … generally without fear of criminal or civil repercussions." *Id.* at 513.  Constitutional protection extends to such criticism "even if the conduct is motivated by personal pique or resentment." *Barrett v. Harrington*, 130 F.3d 246, 263 (6th Cir. 1997).  As will be explained, Blackwell's criticism of Jones, the city

10

attorney for Inkster, plausibly falls within this area of protected free speech.

Defendants argue that Blackwell's speech is not protected under the First Amendment because it constitutes "fighting words," which is speech "likely to cause an average person to react thus causing a breach of the peace." *Sandul v. Larion*, 119 F.3d 1250, 1255 (6th Cir. 1997) (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 573 (1942)). Fighting words include "words which an onlooker would consider 'direct personal insult[s] or [] invitation[s] to exchange fisticuffs.' " *Id.* (quoting *Texas v. Johnson*, 491 U.S. 397, 409 (1989)); *see also Cohen v. California*, 403 U.S. 15, 20 (1971) (" 'Fighting words' [are] those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction.") (citing *Chaplinsky*, 315 U.S. 568). Fighting words are not protected by the First Amendment. *Sandul*, 119 F.3d at 1255 (citing *Chaplinsky*, 315 U.S. at 572). However, "[t]he fighting words exception is very limited because it is inconsistent with the general principle of free speech recognized in our First Amendment jurisprudence." *Sandul*, 119 F.3d at 1255.

While Blackwell's "satir[ical] poster board[,] depict[ing] Defendant Jones's wife lying in bed next to the City of Inkster Mayor" (ECF No. 18, PageID.114) and calling Jones a "chump," (ECF No. 18, PageID.115), could be considered a "direct personal insult or an invitation to exchange fisticuffs," courts have held that " 'a

11

properly trained officer may reasonably be expected' to know the difference between fighting words and protected speech and respond appropriately." *Sevy v. Barach*, No. 17-13789, 2019 WL 3556706, at *10 (E.D. Mich. Aug. 5, 2019) (quoting *City of Houston, Tex. v. Hill*, 482 U.S. 451, 462 (1987)), *rev'd in part on other grounds, appeal dismissed in part*, 815 F. App'x 58 (6th Cir. 2020).

Thus, even if Blackwell's speech could be interpreted as fighting words to an ordinary citizen, Blackwell has sufficiently alleged that, as city attorney for Inkster, Jones should have recognized his speech at the July 18, 2022 Inkster city council meeting speech to be constitutionally protected.

### 3.     Adverse Action

The Sixth Circuit "ha[s] described an adverse action as 'one that is *capable* of deterring a person of ordinary firmness' from exercising the constitutional right in question." *Rudd*, 977 F.3d at 514 (quoting *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010)) (internal quotation marks and citation omitted) (emphasis in original). "[T]he issue is whether a person of ordinary firmness would be deterred, not whether [the plaintiff] himself actually was deterred." *Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007).

"[S]ome adverse actions are so *de minimis* that they do not rise to the level of a constitutionally cognizable injury[.]" *Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018). However, " 'this threshold is intended to weed out *only*

*inconsequential actions*[.]' " *Id.* (quoting *Thaddeus-X*, 175 F.3d at 398) (emphasis added).   Therefore, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law[.]" *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002); *see also Maben*, 887 F.3d at 266 (" '[I]n general, the adverseness question should survive the pleadings stage.' " (quoting *Kennedy v. Bonevelle*, 413 F. App'x 836, 840 (6th Cir. 2011))).   "Nevertheless, since § 1983 is a tort statute, we must be careful to ensure that real injury is involved, lest we 'trivialize the First Amendment' by sanctioning a retaliation claim even if it is unlikely that the exercise of First Amendment rights was actually deterred." *Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005) (quoting *Thaddeus-X*, 175 F.3d at 397).   "[W]hen a plaintiff's alleged adverse action is 'inconsequential,' resulting in nothing more than a 'de minimis injury,' the claim is properly dismissed as a matter of law." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012) (quoting *Bell*, 308 F.3d at 603, 606 (6th Cir. 2002)).

### a.    Claim Against Jones

Blackwell alleges that on July 21, 2022, Jones applied for an ex parte PPO while "working in his official capacity as Inkster City Attorney." (ECF No. 17, PageID.119, 121).  Blackwell further alleges that Jones requested screenshots of Blackwell's Instagram posts containing firearms from Chisholm, (ECF No. 17,

13

PageID.117), and that he did so for the purpose of using those pictures as evidence when filing for the PPO against Blackwell, (ECF No. 17, PageID.119).  He further alleges that Jones was motivated to retaliate against him after he held up the poster board depicting Jones' wife and the mayor in bed during the July 18, 2022 Inkster city council meeting.  (ECF No. 17, PageID.131).

Blackwell claims that the "retaliatory PPO" was filed "in order to silence [him] and prevent him from further attending Inkster City Council meetings." (ECF No. 17, PageID.109).  Blackwell says that "[a]s a direct and proximate result of this PPO, [his] right to freedom of speech, right to petition the government, and right to peaceful assembly were all restrained pursuant to this PPO."  (ECF No. 17, PageID.132).  If the PPO kept Blackwell from criticizing public officials at city council meetings, the adverse action would indeed produce a consequence, and thus Jones' adverse action would "rise to the level of a constitutionally cognizable injury."  *Maben*, 887 F.3d at 266.  "Numerous federal courts have addressed the tension between a public body's interest in conducting an orderly and efficient meeting without fear of judicial intrusion, and a private citizen's interest in speaking freely to his or her elected representatives."  *Shields v. Charter Tp. of Comstock*, 617 F. Supp. 2d 606, 612 (W.D. Mich. 2009) (collecting cases).

> Both interests are important.  The private citizen, by definition, generally has no official power to participate in the public body's decision-making process. When the body opens that process to the general public and allows input from the individual members of the

14

> community, the private citizen has a right to expect a fair and respectful
> hearing even if—maybe even *especially* if—the message is critical of
> the body."

*Id.* (emphasis in original).

"The First Amendment protects that right, while still accommodating the

body's need to conduct its business efficiently, by allowing reasonable and

content-neutral restrictions on speech." *Id.*

The speech at issue here is clearly afforded constitutional protection. *See*

*Murray v. City of New Buffalo*, No. 1:21-CV-983, 2023 WL 11820235, at *9

(W.D. Mich. Apr. 6, 2023).  "Freedom to criticize public officials and expose their

wrongdoing is at the core of First Amendment values, even if the conduct is

motivated by personal pique or resentment." *Barrett v. Harrington*, 130 F.3d 246,

263 (6th Cir. 1997).  "The right of an American citizen to criticize public officials

and policies and to advocate peacefully ideas for change is 'the central meaning of

the First Amendment.' " *Glasson v. City of Louisville*, 518 F.2d 899, 904 (6th Cir.

1975) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 273 (1964)).

However, defendants point out that "[w]hile the PPO did restrain Blackwell

from stalking Jones in person, it did not prohibit Blackwell from attending City

Council meetings via Zoom."  (ECF No. 21, PageID.204).  Thus, according to

defendants, the PPO did not prevent Blackwell from engaging in protected speech

in the form of criticizing alleged government officials such as Jones at Inkster city

council meetings even with the PPO in place.  Defendants cite *Somberg v. Cooper*, No. 20-CV-11917, 2023 WL 6205448, at *9 (E.D. Mich. Sept. 22, 2023) for the assertion that relegating Blackwell's meeting attendance to Zoom does not violate his rights because "[n]othing in the challenged policy prevents Plaintiff or any other member of the bar or public from attending the virtual proceedings."  But the plaintiff in *Somberg* did not raise the issue that forcing one citizen to attend meetings by Zoom may infringe on that individual's First Amendment rights.  In *Somberg*, plaintiff was a defense attorney who took a screenshot of a criminal proceeding conducted via Zoom and posted it, along with "disparaging messages," on social media.  *Id*. at *1.  The prosecution raised the issue that the defense attorney had violated the court's "Policy Regarding the Use of Portable Electronic Devices," which prohibited the use of electronic devices to take photographs in the courtroom.  *Id*. at *1-2.  The defense attorney sued the prosecutor, arguing that enforcement of the court's electronic device policy violated his First Amendment right to access and freedom of expression.  *Id.* at *3.  The *Somberg* court found that these rights were not infringed by the rule against taking photographs of the Zoom hearing.  *Id.* at *9-10.  Nothing in *Somberg* suggests that requiring certain individuals who exercise their First Amendment rights in ways undesired by a city may be limited to city council meeting attendance by Zoom.

Defendants also cite *Hoenack v. Litchfield Elementary Sch. Dist. No. 79*, No.

CV-22-01903-PHX-JJT, 2023 WL 2795513, at *2 (D. Ariz. Mar. 2, 2023), in which the plaintiff was relegated to attending school board meetings via Zoom after a board member obtained an injunction against the plaintiff for harassment. There, the plaintiff filed for a preliminary injunction and the court denied it, stating that he "has not shown that the District took any material adverse action against him with respect to the Zoom-only restriction." *Id.* at *3. That case is also distinguishable. For one, this is a motion to dismiss, where a plaintiff need only allege a plausible violation of his rights. In comparison, obtaining a preliminary injunction is an " 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Id.* (quoting *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012)). Secondly, this case differs because the Michigan Court of Appeals found that Blackwell's conduct was constitutionally protected and therefore did not constitute harassment, whereas the plaintiff in *Hoenack* was found to have engaged in harassment warranting the injunction that was put into place.

Defendants may be correct that limiting Blackwell's attendance at future city council meetings to Zoom may be a *de minimis* injury. However, it is not clear at this stage that a Zoom option was always available to Blackwell, and discovery may shed light on whether such a restriction caused more than a *de minimis* injury to Blackwell. For instance, it is possible that Blackwell's speech would be

17

significantly hampered if he attended via Zoom, where he may not be visible to in-person meeting attendees, and where he may be easily muted with the click of a button.  Given the factual issues that are unable to be resolved at this stage of litigation, it is a question of fact whether Jones took an adverse action against Blackwell.

Blackwell also alleges that he suffered—among other things—"severe mental anguish and distress," "embarrassment and humiliation," and "damage to reputation" as a result of defendants' violations of his constitutional right.  (ECF No. 17, PageID.133).  While the Sixth Circuit has held that "embarrassment and humiliation may be sufficient to establish a First Amendment retaliation claim, this holding was made in the context of the public disclosure of intimate information regarding a rape." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012) (citing *Bloch v. Ribar,* 156 F.3d 673, 676 (6th Cir. 1998)).  In another case, the Sixth Circuit declined to find a sufficient adverse action where public officials published a report which included details of a plaintiff's traumatic childhood incident but the "incident was not the focus of the report, or of the investigation," but was instead "volunteered" by the plaintiff "as an aside during a legitimate line of questioning."  *Mattox*, 183 F.3d at 523.  The Court acknowledged that "the revelation of embarrassing details that are irrelevant to the investigation at hand for the purposes of retaliation is improper, and may constitute a First Amendment

18

retaliation claim," but did not find the revelations printed in the report "[rose] to the level" of embarrassment suffered by plaintiffs in cases who suffered a First Amendment violation.  *Id.*

However, the Sixth Circuit has also held that a public official who knowingly makes false accusations of being stalked by a plaintiff to the media does so with "a retaliatory motive to publicly humiliate and denigrate" the plaintiff for their criticism.  *Barrett*, 130 F.3d at 263.  Given the early stage of this case, and without the benefit of discovery, the alleged adverse injury Blackwell suffered cannot be decided as a matter of law because it is unknown whether Jones engaged in such activity.  In short, Blackwell has alleged a plausible claim against Jones for First Amendment retaliation.

### b.      Claim Against Chisholm

As to Chisholm, Blackwell alleges that he "took the adverse action of screenshotting firearms that he knew to be legally owned and possessed by [Blackwell] and providing them to Defendant Jones to be used in a PPO proceeding against the Plaintiff."  (ECF No. 17, PageID.132).  Defendants argue that Chisholm's sharing of Blackwell's posts is not a sufficiently adverse action because "there is nothing in the Complaint or case law to support the assertion that an individual sharing screenshots from a social media network would somehow deter a 'person of ordinary firmness' from exercising their First Amendment

rights." (ECF No. 21, PageID.198). This argument does not carry the day because Blackwell alleges that defendants engaged in a "coordinated effort" to retaliate against him by obtaining a PPO against him as a means "to silence him and prevent him from further attending Inkster City Council meetings." (ECF No. 17, PageID.109-10). Reading the amended complaint liberally, Blackwell's allegations state a claim for § 1983 civil conspiracy.

As noted above, § 1983 is considered a tort statute, and "[t]he common law has long allowed a conspirator to be found liable for a tort committed by a coconspirator in furtherance of the conspiracy." *Rudd*, 977 F.3d at 513. "Courts have thus applied this conspiracy rule in the § 1983 context," so a plaintiff who plausibly alleges a conspiracy against one defendant can use the conspiracy allegation as a means of holding another defendant liable for the actions of the tortfeasor. *Id.* This means that if Blackwell alleges a plausible conspiracy claim against Chisholm, Blackwell could "avoid § 1983's rule against holding one defendant vicariously liable for another's actions." *Id.* at 512.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007) (citing *Memphis, Tennessee Area Loc., Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004)).

To state a claim for civil conspiracy, a plaintiff must allege facts that, "when

accepted as true, would allow a juror to find that ' "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed" in furtherance of the conspiracy that caused the injury.' " *Marvaso v. Sanchez*, 971 F.3d 599, 606 (6th Cir. 2020) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). On a motion to dismiss, "a plaintiff's specific allegations of a conspiracy will suffice as long as they are plausible." *Rudd*, 977 F.3d at 517 (citing *Novak v. City of Parma*, 932 F.3d 421, 436 (6th Cir. 2019)).

Here, Blackwell identifies a single plan, a conspiratorial objective, and an overt act from Chisholm. He alleges that Jones and Chisholm sought to deter Blackwell from criticizing Jones with the objective of obtaining a PPO for Jones against Blackwell. In furtherance of this objective, Chisholm overtly found pictures of Blackwell's firearms and sent them to Jones, which Jones then used as evidence in support of his PPO petition. This is enough, at the motion to dismiss stage, to substantiate Blackwell's claim against Chisholm and keep Chisholm in the case. Because Blackwell alleges facts sufficient to state a claim for a civil conspiracy between Jones and Chisholm to retaliate against Blackwell for his criticism of Jones at the July 18, 2022 Inkster city council meeting, Chisholm can be held liable as a co-conspirator for Jones' First Amendment retaliation.

### 4. Causal Connection

"[T]o prove causation it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured." *Coleman*, 2020 WL 5648352, at *6 (citing *Nieves*, 587 U.S. at 398). "The retaliatory motive must be a 'but-for' cause to the adverse action." *Id.* (citing *Nieves*, 587 U.S. at 399). The Sixth Circuit has acknowledged that "[m]otive is often very difficult to prove with direct evidence in retaliation cases," *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (citing *Bloch*, 156 F.3d at 682-83), and that "[c]ircumstantial evidence may therefore acceptably be the only means of establishing the connection between a defendant's actions and the plaintiff's protected conduct," *id.*

"The Sixth Circuit has held that 'temporal proximity between the protected conduct and the adverse action by the state actor' may be sufficient evidence of causation." *Coleman*, 2020 WL 5648352, at *6 (quoting *Paige v. Coyner*, 614 F.3d 273, 283 (6th Cir. 2010)). That said, "[s]ubstantial case law from [the Sixth Circuit] cautions about the permissibility of drawing an inference of causation from temporal proximity alone, and temporal proximity alone is seldom sufficient to support the necessary causation." *Bluegrass Dutch Tr. Morehead, LLC v. Rowan Cnty. Fiscal Ct.*, 734 F. App'x 322, 329 (6th Cir. 2018). "[O]ften evidence in addition to temporal proximity is required to permit the inference." *Id.* (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010)).

Here, there is not only extremely close temporal proximity between the

22

events in question, but also direct evidence of retaliation and additional circumstantial evidence of a retaliatory motive.  Blackwell allegedly engaged in his protected speech at the July 18, 2022 Inkster city council meeting.  Jones then requested that Chisholm send him screenshots of firearm posts from Blackwell's Instagram on or around July 19th, and Jones then petitioned for a PPO against Blackwell on July 21st.  (ECF No. 17, PageID.117, 119-120).  In his PPO petition, Jones listed the July 18th incident as a reason for seeking the PPO and included the screenshots from Blackwell's Instagram as an exhibit.  (ECF No. 17-5, PageID.151-152).  The petition thus offers direct evidence of retaliation.  The July 18th incident is the latest incident listed in the petition, creating a strong inference that it was the catalyst for Jones' decision to petition for a PPO, and thus that but for this incident, Jones may have not petitioned for the PPO on July 21.  (*See* ECF No. 17-5, PageID.151-152).  Based on the timing of Jones' request for the screenshots and the inclusion of Blackwell's speech at the July 18th meeting in the PPO petition, it is plausible that the PPO was sought in retaliation for Blackwell's July 18th speech.   In other words, Blackwell has sufficiently alleged causation.

### C.    Defendants Acted Under Color of Law

To state a claim under 42 U.S.C. § 1983, "a plaintiff must 'identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law.' "  *Watkins v. City of Battle Creek*, 273 F.3d

682, 685 (6th Cir. 2001) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)).  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' "  *West v. Atkins*, 487 U.S. 42, 49 (1988) (citing *United States v. Classic,* 313 U.S. 299, 326 (1941)).  In other words, "Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office."  *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001).

### 1.    Chisholm

Blackwell claims that Chisholm acted under color of state law because he used his "official City of Inkster Instagram page titled 'CouncilmanChisholm' " to follow Blackwell's Instagram profile and therefore access the pictures that he sent to Jones via his "official City of Inkster government provided email address." (ECF No. 17, PageID.116-117).  Defendants argue that this is no more than "manufacture[d]" state action, and that "there is no allegation that Chisholm took any action resulting from the exercise of power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' "  (ECF No. 21, PageID.201 (quoting *West*, 487 U.S. at 49)).

24

As defendants point out, the Sixth Circuit has held that a defendant's social media posts "do not carry the force of law simply because the page says it belongs to a person who's a public official." *Lindke v. Freed*, 37 F.4th 1199, 1204 (6th Cir. 2022), *cert. granted,* 143 S. Ct. 1780, 215 L. Ed. 2d 669 (2023), and *vacated and remanded,* 601 U.S. 187 (2024).  However, the *Lindke* decisions at the Sixth Circuit and Supreme Court dealt with making online posts, deleting comments on those posts, and blocking users from making future comments.  Further, in vacating the Sixth Circuit's decision in *Lindke*, the Supreme Court noted two relevant inquiries: (1) whether the "account carried a label (*e.g.*, 'this is the personal page of James R. Freed')" as opposed to "when an account belongs to a political subdivision (*e.g.*, a 'City of Port Huron' Facebook page) or is passed down to whomever occupies a particular office (*e.g.*, an '@PHuronCityMgr' Instagram account)" and (2) whether the official taking social media action "is purporting to exercise state authority[.]"  *Lindke*, 601 U.S. at 202-203.

Here, the undersigned is faced with the allegations that a councilman used his account, which followed a private citizen's private account, for the purpose of helping the city attorney obtain a PPO against the citizen.  Chisholm's Instagram posts, which would be easier to compare to common law First Amendment principles, are not at issue.  But *Lindke* instructs that the title of Chisholm's account and the use of his government email address are relevant, as is Chisholm's

intent to exercise state authority.  *Id.*  Blackwell implies that by using an official account, Chisholm is able to follow private accounts in a manner that " 'is clothed with the authority of state law.' "  *Blackwell v. Allen*, 2022 WL 791408 at *3 (quoting *Polk Cnty.*, 454 U.S. at 317-318).  (*See* ECF No. 17, PageID.116-17).

Categorizing the activities of an Instagram account that purports to be an official one is a "fact-specific undertaking" in which the "content and function [of the activity] are the most important considerations."  *Lindke*, 601 U.S. at 203. Further, in *Lindke*, the Court "cautioned that courts should apply a 'fact-intensive inquiry' when answering state-action questions and recognized the 'rapidly changing' nature of social media."  *Mackey v. Rising*, 106 F.4th 552, 559 (6th Cir. 2024). "Categorizing conduct…can require a close look" because many public officials use social media platforms "for personal communication, official communication, or both—and the line between the two is often blurred."  *Lindke*, 601 U.S. at 197.  Thus, it would be improper to dismiss Blackwell's claim at this stage.

Considering all of the above, Blackwell has plausibly alleged that Chisholm acted under color of law in using his official councilman Instagram account to access Blackwell's account and provide information from it to Jones for Jones' purpose of obtaining a PPO against Blackwell.

2.    Jones

26

In a similar vein, defendants argue that Blackwell "sets forth insufficient facts to establish (i) that Jones obtained the PPO in the course of performing his duties of office; or (ii) that Jones could not have obtained the PPO without the authority of his office."  (ECF No. 21, PageID.205 (citing *Waters*, 242 F.3d at 359)).  "[N]ot every action undertaken by a person who happens to be a state actor is attributable to the state," which is to say that "the acts of state officials in the ambit of their personal pursuits' do not constitute state action."  *Id.*

Defendants argue that Jones petitioned for the PPO as an individual concerned about Blackwell's harassment and stalking, as he must, because the statute authorizing it (MCL 600.2950a) only applies to "situations in which an individual, who is being stalked, petitions a court for a PPO in order to halt the stalking of said petitioner."  *Patterson v. Beverwyk*, 320 Mich. App. 670, 684 (2017).  They further argue that Jones did not require the authority of his office to obtain the PPO, as the remedy is available to any private citizen.  However, defendants cannot defeat Blackwell's well-pleaded allegations at this stage by disagreeing with him.

Blackwell has alleged that Jones obtained the PPO in retaliation for Blackwell's protected conduct at city council meetings, as the PPO prevented Blackwell from legally owning firearms and from continuing to exercise his First Amendment rights at future meetings, *not* for the legitimate purpose of curtailing

27

harassment or stalking. Blackwell has also alleged that Jones prepared his PPO petition and defended it while working as Inkster's city attorney, shown by multiple invoices to Inkster including such entries, and that he and his firm (through the attorney representing him in proceedings) were paid by Inkster to do so, in bills approved by the Inkster city council. Taking these allegations as true, one cannot say that Jones was acting in the ambit of his personal pursuits. *See Waters*, 242 F.3d at 359.

In support of their arguments, defendants cite *Hilton v. Mish*, 224 F. Supp. 3d 595 (W.D. Mich. 2016) and *Blackwell v. Allen*, 2022 WL 791408,[5] cases in which city attorneys were found not acting under color of state law in sending emails from a government address expressing views on certain matters, *Hilton*, or sending offensive emails from a private law firm account in response to personally insulting emails from a private citizen, *Blackwell*. These cases are distinguishable because they lack allegations that would show that either type of email communication was made under color of law.

Unlike the emails sent by city attorneys in those cases, here, Blackwell has plausibly alleged that his PPO petition and litigation was supported by Inkster in that Jones prepared the PPO as part of his work for the city and was compensated thusly. Although the Sixth Circuit has noted that "[a] private-sector attorney does

---

[5] The plaintiff in *Blackwell v. Allen* is the same plaintiff as in this case.

28

not automatically become a state actor just by representing a government entity[,]"
it "d[id] not foreclose the possibility that an attorney retained by the government
could act under color of state law." *Blackwell v. Allen*, No. 22-1300, 2022 WL
17832191, at *6 (6th Cir. Dec. 21, 2022); *see also Georgia v. McCollum*, 505 U.S.
42, 54 (1992) ("[T]he determination whether a public defender is a state actor for a
particular purpose depends on the nature and context of the function he is
performing.").

In *Blackwell v. Allen*, Blackwell sent a parody image similar to the one sent
in this case to several officials with the city of Hamtramck, including the city
attorney.  The city attorney responded with several emails to Blackwell that were
disparaging, insulting, and crude.  2022 WL 17832191 at *1-2.  Although the city
attorney in *Blackwell v. Allen* was alleged to have been compensated for his work
by the city, including for the time he used to email Blackwell, Blackwell could not
point to an invoice entry "that could plausibly indicate that [the city attorney]
billed the City for the time spent responding" to his emails.  *Blackwell v. Allen*,
2022 WL 17832191 at *6.  Even though that case was decided on a motion to
dismiss, the Sixth Circuit declined "to accept the plaintiff's allegations as true
when they [were] contradicted" by invoice entries submitted by the defendant.  *Id.*[6]

---

[6] While the District Court found that the invoices were "immaterial to the Court's
resolution of the motion to dismiss," *Blackwell v. Allen*, 2022 WL 791408, at *2 n.
6, the Sixth Circuit found that the invoices directly contradicted Blackwell's

In *Hilton v. Mish*, the plaintiffs' attorney sent an email to the editor of the Grand Rapids Press, copying the defendant in that case, the city attorney for Grand Rapids, Michigan.  The email encouraged the media to attend a lecture by the plaintiffs' religious organization.  The defendant responded via email with many disparaging comments about the plaintiffs and their family, also suggesting that the plaintiffs' organization should not receive a tax exemption.  *Hilton v. Mish*, 224 F. Supp. 3d at 599-600.  The plaintiffs sued, claiming that the defendant sent the email in her capacity as the city attorney, but the court dismissed the claim, finding that there were no allegations indicating that the defendant acted under color of law.  *Id*. at 601-02.  The *only* indications that the defendant may have acted in her official capacity were that she was the city attorney and that she used her city email address.  *Id*.  Although the court said that use of her work email was "arguably done in bad judgment, [that] does not transform [her] private conduct into official City business."  *Id*. at 602.

Here, Blackwell has plausibly alleged many more facts than the plaintiffs in those cases indicating that Jones acted under color of law, and his allegations that the City of Inkster paid Jones and his firm for activities related to the preparation

---

allegations in his complaint and were part of the reason that the Sixth Circuit found the city attorney in *Blackwell v. Allen* did not act under color of state law. *Blackwell*, 2022 WL 17832191 at *6-7. The invoices attached to the complaint here have the opposite effect, as they instead lend support to the allegations by showing entries relating to Blackwell.

and defense of the PPO are supported by invoices provided by Blackwell that contain entries related to litigation involving Blackwell. For instance, Blackwell's allegation that Jones billed the city for review of Chisholm's July 19, 2022 email containing the requested screenshots is plausibly indicated in the July 2022 invoice. (*See* ECF No. 20, PageID.178). The invoices also plausibly show that the City of Inkster paid attorneys at Schenk and Bruetsch PLLC for review of Blackwell's August 7, 2022 request to the Michigan Court of Appeals for leave to appear for oral argument remotely via Zoom. (*See* ECF No. 17-8, PageID.158). Thus, the invoices provided by Blackwell, when considered in combination with the allegations in his complaint, create a plausible claim that Jones and his firm were paid by the City of Inkster to obtain and defend the PPO. Therefore, Blackwell has alleged enough to survive dismissal at this stage.

### D. *Monell* Claim

Blackwell has included Inkster as a defendant, alleging municipal liability against Inkster for the actions of Chisholm and Jones.

### 1. Standard

It is well-established that liability under § 1983 must be based on more than merely the right to control employees. *Polk Cnty*, 454 U.S. at 325-26; *Monell*, 436 U.S. at 694-95. To make out a claim under § 1983, Blackwell's "allegations must demonstrate that each defendant [ ], through his or her own individual actions,

*personally violated* [his] rights under clearly established law." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis in original) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "It is well-settled that [g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (internal quotation marks omitted).

When the acts of individual employees represent a municipal custom or policy, a municipal defendant can be held liable for the underlying acts. *Id.* at 690-92. Such a claim can be made where a plaintiff alleges one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* (citation omitted).

## 2.    Application

Defendants argue that Blackwell's *Monell* claim must fail because he has not alleged a constitutional violation or state action and that no illegal practice or custom caused Blackwell's alleged injury. The first argument, whether Blackwell alleged a constitutional violation caused by state action, has been addressed above.

As to the second point, defendants argue that Blackwell failed to allege that

there were "formal rules or understandings … that were intended to, and did, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Jackson v. City of Cleveland*, 925 F.3d 793, 829 (6th Cir. 2019). They say the fact that Jones' legal bills were paid *after* he prepared the PPO petition on his own behalf shows that there was no alleged policy or custom in place that was the moving force behind Jones' action. Indeed, "[w]rongful conduct after an injury cannot be the proximate cause of the same injury" alleged in a *Monell* claim. *Tompkins v. Frost*, 655 F. Supp. 468, 472 (E.D. Mich. 1987). On the contrary, a plaintiff must show that a constitutional violation "was caused by an *existing*, unconstitutional municipal policy" attributable to a municipal policymaker. *Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985) (emphasis added).

This defense does not fully address Blackwell's allegations. In the amended complaint, Blackwell alleges that Inkster schemed with Jones' law firm to conceal the improper use of public funds to pay for Jones' PPO. (ECF No. 17, PageID.123). This is said to have occurred during "closed sessions" under the Michigan Open Meetings Act, which are intended to be used to discuss official lawsuits involving the municipality. (*Id.*). Instead of using closed sessions for this purpose, Blackwell alleges that Jones and the Inkster city council used them to discuss Inkster funding Jones' PPO petition and for Jones' representation in his PPO-related litigation involving Blackwell. (*Id.*). In fact, Blackwell went on to

33

allege that Inkster city counsel members, including Chisholm, "had actual and constructive knowledge _beforehand_ that [Jones' firm's] monthly legal invoices contained billing for Defendant Jones's PPO against [Blackwell] before they voted to approve at City Council meetings." (*Id.*, PageID.127) (emphasis in original). This includes the August 15, 2022 invoice that contained billing for Jones' initial PPO petition in July. (*Id.*). Jones has plausibly alleged that a policy was put into place *before* Blackwell's alleged injury.

Defendants also argue that Blackwell has not stated a claim for *Monell* liability because he has not alleged any similar incidents that would demonstrate Inkster's practice or custom of funding PPO petitions against troublesome citizens. "He has only his own experience on which to rely, and that is not enough to state a claim against the [City]." *Nouri v. Cnty. of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015). However, *Nouri* and the district court cases cited by defendants to the same effect apply to "custom" or "pattern" claims. Specifically, *Nouri* applied to a claim of "a custom of *inaction* towards constitutional violations." *Id.* (emphasis in original). Here, as defendants emphasized previously in their brief, Blackwell proceeds on a theory of "legislative enactments" or "official policy." Having alleged that Inkster put in place a policy to fund Jones' PPO petition, Blackwell need not allege that other citizens have faced similar issues.

> When proceeding under the first theory of *Monell* liability, under which a plaintiff must show an official policy or legislative enactment, the

34

> plaintiff must show that there were "formal rules or understandings—
> *often but not always committed to writing*—that [were] intended to, and
> [did], establish fixed plans of action to be followed under similar
> circumstances consistently and over time." *Pembaur v. City of
> Cincinnati*, 475 U.S. 469, 480-81 (1986) (emphasis added).

*Jackson v. City of Cleveland*, 925 F.3d 793, 829 (6th Cir. 2019).

Under this theory, Blackwell's *Monell* claim against Inkster is properly

alleged and should not be dismissed at this stage.

### E.     Qualified Immunity

Defendants argue that Chisholm and Jones are entitled to qualified immunity

because they are not alleged to have violated any clearly established constitutional

rights.

### 1.     Standard

Qualified immunity shields government officials performing discretionary

functions "from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Created to

protect government officials from interference with their official duties, qualified

immunity "is an immunity from suit rather than a mere defense to liability."

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It gives officials "breathing room

to make reasonable but mistaken judgments and protects all but the plainly

incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3,

6 (2013) (punctuation modified).  After a defending official initially raises qualified immunity, the plaintiff bears the burden of showing that the official is not entitled to qualified immunity.  *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).

The Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, [it] determine[s] whether the allegations give rise to a constitutional violation; and (2) [it] assess[es] whether the right was clearly established at the time of the incident."  *Id.* at 472.  The steps may be considered in either order, so "[i]f the court concludes that no constitutional violation has occurred, there is no need to address whether the alleged right was clearly established."  *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

In determining whether a right has been clearly established, courts " 'must look first to decisions of the Supreme Court, then to decisions of [their circuit court] and other courts within our circuit, and finally to decisions of other circuits.' " *Guertin v. State*, 912 F.3d 907, 932 (6th Cir. 2019) (quoting *Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006)).  Cases that are nonbinding (e.g., district court decisions, decisions of other circuits) may be used as persuasive, but not mandatory, authority.  *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

2.    Application

36

Defendants largely rest on the first step of the analysis, arguing that Blackwell has not alleged a constitutional violation.  The undersigned has examined and disagrees with this argument, as explained above.

As to the 'clearly established' step, they argue that the decisions of the Wayne County Circuit Court granting and upholding Jones' PPO—before this decision was reversed by the Michigan Court of Appeals—show that Blackwell's right was not clearly established at the time of the purported violation.

Defendants have offered no authority to support the contention that an action being granted and upheld, after the fact, by a state trial court shows that the right in question is not clearly established.  On the contrary, the Michigan Court of Appeals decision reversing the trial court on the underlying PPO made clear that existing law did not allow for the abridgement of Blackwell's First Amendment rights.  *DWJ v. CLB*, 2023 WL 7270488 at *4.  When a citizen's speech " 'relates to a public figure and an important public concern,' a PPO may not be issued to restrict the speech."  *Id.* (quoting *Buchanan v. Crisler*, 323 Mich. App. 163, 189 (2018)).  Furthermore, "[c]onduct that is constitutionally protected may not be considered harassment, and thus may not be considered stalking."  *Id.* (citing *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 721 (2005); *Lamkin v Engram*, 295 Mich App 701, 711 (2012)).

As laid out in this Report and Recommendation, Sixth Circuit case law supports the conclusion that Blackwell has alleged First Amendment retaliation against Chisholm and Jones acting under color of law.  He has also alleged a cause of action against Inkster for municipal liability for enacting a policy under which the city would support this retaliation.  These claims, and Blackwell's relevant constitutional rights, are therefore clearly established.  They should not be dismissed under qualified immunity.

## V.     Conclusion

For the reasons stated above, it is RECOMMENDED that defendants' motion to dismiss, (ECF No. 21), be DENIED.

Dated: August 16, 2024                    s/Kimberly G. Altman
Detroit, Michigan                         KIMBERLY G. ALTMAN
                                          United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 16, 2024.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager