## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**CHARLES BLACKWELL**,            Case No: 23-cv-13015

      Plaintiff,            Hon. Judge: Mark Goldsmith
                      Hon. Mag. Judge: Kimberly Altman

-vs-

**STEVEN CHISHOLM**, in his
Individual capacity; **DAVID JONES**
in his Individual capacity; **CITY OF INKSTER**
a government entity.

      Defendant's,

---

Charles Blackwell
22655 Fairmont Dr., Apt. 102
Farmington Hills, MI, 48335
Cblack618@gmail.com
313-739-3597

**Schenk and Bruetsch PLLC**
Peter Doyle (P81815)
211 W. Fort, Suite 1410
Detroit, MI, 48226
313-774-1000
peter.doyle@sbdetroit.com
Attorney for Defendant David Jones

**Perkins Law Group**
Todd Russell Perkins (P55623)
615 Griswold St, Suite 400
Detroit, MI, 48226
313-964-1702
tperkins@perkinslawgroup.net
Attorney for Defendant's City of Inkster &
Steven Chisholm

---

**PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT CITY OF INKSTER AND REQUEST FOR <u>VIRTUAL</u> EMERGENCY HEARING[1]**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff Charles Blackwell respectfully moves this Court for an emergency order enjoining the Defendant, City of Inkster, from taking any retaliatory actions against the Plaintiff such as the filing of a stalking (PPO) or the issuance of a no-contact order due to his protected speech via email to Inkster government officials or his protected speech at City Council meetings.

The emergency basis for this motion is due to City of Inkster City Councilwoman Felicia Rutledge comments in her official capacity at the 7PM November 4th, 2024, Inkster City Council meeting directly calling on the Defendant, City of Inkster, to officially file a stalking (PPO) or to issue the Plaintiff a no-contact order of all city officials due to his protected speech via email or at Inkster City Council meetings.

Pursuant to E.D. Mich LR. 7.1, Plaintiff Blackwell emailed Defense Counsel Peter Doyle and Todd Perkins on November 4th, 2024, at 7:41PM seeking concurrence in this emergency preliminary injunction motion explaining the events

---

[1]   Plaintiff Blackwell is paralyzed and confined to a wheelchair. Thus, he would need for this court to schedule a virtual hearing as a reasonable disability accommodation pursuant to the American with Disability Act, 42 U.S.C. § 12101

that happened at the 7PM November 4th, 2024, Inkster City Council meeting that had just ended minutes ago.

On November 5th, 2024, Defense Counsel for David Jones, Attorney Peter Doyle, responded via email stating that he could not concur in the relief requested since he does not represent the City of Inkster.  On November 5th, Plaintiff Blackwell sent another email at 8am to Attorney Todd Perkins (Defense Counsel for the City of Inkster) to explain the nature of the motion and seek concurrence.  Additionally, Plaintiff Blackwell left a verbal phone message on November 5th with Attorney Perkins office staff at 8:37am.  Due to the urgent and exceptional circumstances of the credible threat of an immediate or imminent stalking (PPO) or no contact order, Plaintiff Blackwell filed this motion without waiting for the traditional three business days response period set forth by the court.

/s/CharlesBlackwell

Dated November 5th, 2024

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**CHARLES BLACKWELL**,  Case No: 23-cv-13015

      Plaintiff,  Hon. Judge: Mark Goldsmith
                              Hon. Mag. Judge: Kimberly Altman
-vs-

**STEVEN CHISHOLM**, in his
Individual capacity; **DAVID JONES**
in his Individual capacity; **CITY OF INKSTER**
a government entity.

      Defendant's,

---

# BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

---

4

## ISSUES PRESENTED

**1.** Should the City of Inkster be preliminary enjoined from retaliating against the
Plaintiff with a stalking (PPO) or no-contact order as publicly advocated by
Inkster Councilwoman Felicia Rutledge at the November 4th, 2024, Inkster
City Council meeting due to the basis of his protected speech guaranteed by
the First Amendment?

Plaintiff Answers: Yes

Defendant, City of Inkster Likely Answers: No .

Defendant, David Jones Likely Answers: No

Defendant Steven Chisholm Likely Answers: No

## CONTROLLING OR MOST APPROPIATE AUITHORITY

1. Fed. R. Civ. P. 65

2. Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019)

3. DWJ v. CLB, No. 363324, 2023 WL 7270488, at *3 (Mich. Ct. App. Nov. 2, 2023).

4. Alexander v. United States, 509 U.S. 544 (1993)

# TABLE OF CONTENT

ISSUES PRESENTED.................................................................................5

CONTROLLING OR MOST APPROPIATE AUITHORITY .................................6

TABLE OF AUTHORITIES.........................................................................8

INTRODUCTON .....................................................................................10

FACTS RELEVANT TO THIS MOTION ..................................................11

   1.   November 4th, 2024, Inkster City Council Meeting and Inkster Council

   Woman Felicia Rutledge's Threats For The City To File A Stalking (PPO) Or

   Issuance of No-Contact Order Against the Plaintiff.............................................11

APPLICABLE LEGAL STANDARD FOR PRELIMINARY INJUNCTION .......13

ARGUMENT ........................................................................................14

   I.   Plaintiff is likely to succeed on the merits. ...............................................15

     A.   Government officials Cannot Silence or Muzzle Their Critics...........18

   II.   Plaintiff is likely to suffer irreparable harm by the possible immediate or

   imminent filing of a stalking (PPO) or issuance of a no-contact order. ...........18

   III.   The Balance of Harms Favors A Preliminary Injunction .......................20

   IV.   The Public Interest in the First Amendment Favors an Injunction.........21

# TABLE OF AUTHORITIES

**Cases**

303 Creative LLC v. Elenis,
  143 S. Ct. 2298 (2023)......................................................................... 10, 14

Am. Civil Liberties Union Fund of Mich. v. Livingston Cty.,
  796 F.3d 636 (6th Cir. 2015)............................................................... 19, 20

Anders v. Cuevas,
  984 F. 3d 1166 (6th Cir. 2021)..................................................................21

Barrett v. Harrington,
  130 F.3d 246 (6th Cir. 1997)....................................................................16

Bays v. City of Fairborn,
  668 F.3d 814 (6th Cir. 2012)....................................................................13

Bonnell v. Lorenzo,
  241 F.3d 800 (6th Cir. 2001)....................................................................19

Borough of Duryea v. Guarnieri,
  564 U.S. 379 (2011)................................................................................17

Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati,
  363 F.3d 427 (6th Cir. 2004).............................................................. 20, 21

Colvin v. Caruso, 605 F.3d 282 (6th Cir. 2010)......................................14

Connick v. Myers, 461 U.S. 138 (1983) ..................................................17

DWJ v. CLB,
  No. 363324, 2023 WL 7270488 (Mich. Ct. App. Nov. 2, 2023)............... 15, 20

Elrod v. Burns,
  427 U.S. 347 (1976) ...............................................................................19

FEC v. Wis. Right to Life, Inc.,
  551 U.S. 449 (2007) ...............................................................................14

G & V Lounge, Inc. v. Mich. Liquor Control Comm'n,
  23 F.3d 1071 (6th Cir. 1994)....................................................................21

Hartman v. Moore,
  547 U.S. 250 (2006) ...............................................................................14

Logue v. Book,
  297 So. 3d 605 (Fla. 4th DCA 2020)........................................................18

Mirabella v. Villard,
 853 F.3d 641 (3d Cir. 2017).............................................................18

N.Y. Times Co. v. Sullivan,
 376 U.S. 254 (1964) ......................................................................16

Nieves v. Bartlett,
 139 S. Ct. 1715 (2019)....................................................................14

Novak v. City of Parma,
 932 F.3d 421 (6th Cir. 2019)..........................................................19

Obama for Am. v. Husted,
 697 F.3d 423 (6th Cir. 2012)..........................................................19

Planet Aid v. City of St. Johns, Mich.,
 782 F.3d 318 (6th Cir. 2015)..........................................................13

Rudd v. City of Norton Shores,
 977 F.3d 503 (6th Cir. 2020)..........................................................21

San Diego v. Roe, 543 U.S. 77 (2004)....................................................17

Saxe v. State College Area Sch. Dist.,
 240 F.3d 200 (3rd Cir. 2001)..........................................................16

Southeastern Promotions, Ltd. v. Conrad,
 420 U.S. 546 (1975) ......................................................................19

TM v MZ (On Remand),
 326 Mich App 227; 926 NW2d 900 (2018) ....................................16

## Michigan Laws

Mich. Comp. Laws § 750.411h(1)(d) ....................................................16

## INTRODUCTON[2]

As the Supreme Court has noted, the "First Amendment's protections belong to all, not just to speakers whose motives the government finds worthy." *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2307 (2023).  In the City of Inkster, Inkster government officials do not find Plaintiff Blackwell's speech critical of the government worthy.  In return, they resort to unconstitutional tactics to censor the protected speech of the Plaintiff.  But that's not how life works in a free society.  It is well established that government officials cannot jail or muzzle their critics with retaliation.

This 42 U.S.C 1983 lawsuit is regarding the City of Inkster retaliating against the Plaintiff with a meritless stalking (PPO) that was ultimately reversed by the Michigan Court of Appeals on First Amendment Grounds.  (ECF No. 17, First Amended Complaint); (ECF No. 17-9, Michigan Court of Appeals Opinion Reversing PPO).  One would think that the City of Inkster learned their lesson that

---

[2]     This motion is directed towards the Defendant, City of Inkster, which has not filed any interlocutory appeal from this Court's September 30th, 2024, opinion and order (ECF No. 38) and the time to do so has expired.  Thus, this court still has jurisdiction over the City of Inkster portion of the case even though Defendant's David Jones and Steven Chisholm have filed interlocutory appeals to the Sixth Circuit. (ECF No. 44 & 47) (Notices of Appeal to Sixth Circuit).

they cannot retaliate against Plaintiff Blackwell with a stalking (PPO) in order to suppress his protected speech and criticism of government officials.

On the eve of the November 5th, 2024, election, Inkster City Councilwoman Felicia Rutledge used her official role at the November 4th, 2024, Inkster City Council meeting to advocate for the City of Inkster to officially file a stalking (PPO) against the Plaintiff or to issue him a no-contact order because of the nature of his protected speech at Inkster City Council meetings or via email.  This is the very same unconstitutional, retaliatory conduct that initiated this pending lawsuit.  (ECF No. 17, First Amended Complaint).  Plaintiff Blackwell faces a credible threat of the City of Inkster further retaliating against him with another stalking (PPO) or no-contact order as advocated by Inkster City Councilwoman Felicia Rutledge on November 4th.

## FACTS RELEVANT TO THIS MOTION

1. **November 4th, 2024, Inkster City Council Meeting and Inkster Council Woman Felicia Rutledge's Threats For The City To File A Stalking (PPO) Or Issuance of No-Contact Order Against the Plaintiff.**

   Plaintiff Charles Blackwell is a self-described political activist and paralyzed to a wheelchair. (**Exhibit A, Blackwell Declaration, ¶ 1**).  Since Plaintiff Blackwell is paralyzed and disabled, he is unable to physically attend City of Inkster City Council meetings without physical hardship.  As such, he is afforded a disability

accommodation for his public comments to be verbally on his behalf by Inkster staff members.

On Friday November 1st, 2024, Plaintiff Blackwell emailed his written public comments to the Inkster City Clerk's office to be read at the November 4th, 2024, Inkster City Council meeting. **(Exhibit B, Plaintiff's Submitted Public Comments); (Exhibit A, Blackwell Decl., ¶ 3)**. The public comments submitted by Plaintiff Blackwell to be read by the Inkster City Clerk stated that:

> "Good Evening
>
> Mayor Byron Nolen is a crook, and he should inform the public as to why he allowed the Inkster HR Director Shawn Crenshaw to buy a City of Inkster (NSP) foreclosure property for $30,000.
>
> Also, did Councilwoman Felicia Rutledge perform any tricks on Halloween ?

**(Exhibit B, Plaintiff's Submitted Public Comments)**

At the November 4th, 2024, Inkster City Council Meeting, Inkster City Attorney Todd Perkins (also defense counsel for Defendant's City of Inkster and Steven Chisholm) proceeded to publicly and verbally read Plaintiff's submitted public statements on his behalf. (**Exhibit A, Blackwell Decl., ¶ 5**). Inkster Councilwoman Felicia Rutledge, a legislative member of the City Council, then immediately used her allotted speaking time to falsely accuse the Plaintiff of stalking and advocated for the City of Inkster to file a stalking (PPO) against the Plaintiff or

issue him a no-contact order due to his speech via email or speech at City Council meetings. **(Exhibit A, Blackwell Decl., ¶ 9).**

## APPLICABLE LEGAL STANDARD FOR PRELIMINARY INJUNCTION

A district court balances four factors to determine whether to grant a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012).

"When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor." *Planet Aid v. City of St. Johns, Mich*., 782 F.3d 318, 331 (6th Cir. 2015) (internal quotation omit).

## ARGUMENT[3]

Whether its Plaintiff Blackwell's speech via email or public comments submitted to be read at Inkster City Council meetings, Plaintiff Blackwell has the clear First Amendment right to criticize Inkster government officials and not face government retaliation for such speech. "`[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722, (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). These "protections," it bears reminding, do not "belong only to speakers whose motives the government finds worthy; its protections belong to all, including to speakers whose motives others may find misinformed or offensive." *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2317 (2023) (citing *FEC v. Wis. Right to Life, Inc*., 551 U.S. 449, 468 (2007).

A party must show that their motion for preliminary injunction is related to the conduct as alleged in the complaint. See *Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010) ("A basic showing necessary for obtaining a preliminary injunction is that there must be some relationship between the conduct giving rise to

---

[3] Inkster City Council meetings are recorded via ZOOM and typically uploaded online to YouTube 7-10 days afterwards.  Since this City Council meeting just occurred yesterday on November 4th, Plaintiff Blackwell is unable to provide a copy of the City Council meeting.  However, Plaintiff relies on his declaration under the penalty of perjury for the discussions that occurred at this City Council meeting. **ATTACHED AS EXHIBIT A**.  However, the City of Inkster surely has a copy in their possession and control to provide to this court immediately.

the claims in the complaint and the injury sought to be prevented by the motion for preliminary injunctive relief."). Plaintiff can easily make this showing and connection. The facts as alleged in Plaintiff Blackwell First Amended Complaint alleged that the City of Inkster, David Jones, and Steven Chisholm retaliated against him with a stalking (PPO) due to his protected speech at Inkster City Council meetings. (ECF No. 17). This motion for preliminary injunction seeks to enjoin the City of Inkster from filing another retaliatory (PPO) against the Plaintiff due to his protected speech at Inkster City Council meetings or via email to government officials.

## I.   Plaintiff is likely to succeed on the merits.

First, Plaintiff Charles Blackwell has already successfully reversed a prior and similar stalking (PPO) filed by Defendant, David Jones, the-then Inkster City Attorney. (ECF No. 17-9, Michigan Court of Appeals Opinion Reversing PPO). *DWJ v. CLB*, No. 363324, 2023 WL 7270488, at *3 (Mich. Ct. App. Nov. 2, 2023). In *DWJ v. CLB*, Defendant Jones complained about Plaintiff Blackwell's protected speech via email or at Inkster City Council meetings. *Id*. at *3. The Court of Appeals found that this was protected speech and not the basis for a PPO. This is the very same protected expression that Inkster City Councilwoman Felicia Rutledge complains of.

Secondly, Plaintiff Blackwell already survived a Rule 12(b)(6) motion in which this court found that it was plausible that the City of Inkster, Steven Chisholm and David Jones violated Plaintiff's First Amendment rights by retaliating against him  with this prior stalking (PPO).  (ECF No. 32, Magistrate Judge R&R), R&R adopted, (ECF No. 38). Third, the State of Michigan stalking statute, Mich. Comp. Laws § 750.411h(1)(d), states that "Harassment" ***does not*** "include constitutionally protected activity or conduct that serves a legitimate purpose."  (emphasis added). As the Michigan Court of Appeals has stated in a stalking PPO case, while relying on federal case law, "there is no categorical `harassment exception' to the First Amendment's free speech clause." *TM v MZ (On Remand)*, 326 Mich App 227, 240; 926 NW2d 900 (2018) (quoting *Saxe v. State College Area Sch. Dist.*, 240 F.3d 200, 204 (3rd Cir. 2001)).  The Court in *TM* further stated that, "it was not enough to show that respondent's words amounted to harassment or obnoxiousness."  *Id*. at 243.

The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and **that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials**." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (emphasis added).  Or as the Sixth Circuit has stated, "[t]he First Amendment right to criticize public officials is well-established and supported by ample case law." *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997).  The

16

First Amendment Petition Clause protects the right of citizens "to express their ideas, hopes, and concerns to their government and their elected representatives." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011). Here, Inkster City Councilwoman Felicia Rutledge is a government official subject to the requirements of the Constitution such as the First Amendment.

Each year, on Halloween October 30th, everyone celebrates the holiday by stating "Trick or Treat." Plaintiff's speech he submitted to be read at the November 4th, 2024, Inkster City Council meeting asking whether if Councilwoman Felicia Rutledge performed any tricks for Halloween is protected speech on a matter of public concern.[4] "Speech deals with matters of public concern when it can `be fairly considered as relating to any matter of political, social, or other concern to the community,' . . . or when it `is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Connick v. Myers*, 461 U.S. 138, 146 (1983); *San Diego v. Roe*, 543 U.S. 77, 83-84 (2004) (same) (per curiam)). Halloween is a topic of social concern and otherwise is a subject of legitimate news interest.

---

[4] Speech on matter of private concern is also protected by the First Amendment. *Jenkins v. Rock Hill Loc. Sch. Dist*., 513 F.3d 580, 587 (6th Cir. 2008) ("Likewise, the Supreme Court has held that private speech is protected just like speech on public matters.")

In short, Plaintiff Blackwell clearly has the First Amendment right to criticize City of Inkster government officials via email or at Inkster City Council meetings.

### A. Government officials Cannot Silence or Muzzle Their Critics

Plaintiff Blackwell directs this Court's attention to Mirabella v. Villard, 853 F.3d 641 (3d Cir. 2017). In *Mirabella*, a local government official responded back via email to a pair of local upset citizens issuing them a no-contact order for direct communications with the municipality. *Id*. at 647. The Third Circuit found that this no contact order violated the First Amendment's petition clause. *Id*. at 655. (finding that the no-contact order could not pass constitutional intermediate scrutiny).

In *Logue v. Book*, 297 So. 3d 605 (Fla. 4th DCA 2020), the Florida Court of Appeals reversed a stalking injunction against a critic of a Florida State Senator. In *Logue*, the Court stated that:

> But the Constitution requires that public figures, including both elected and non-elected officials, have thicker skin in their response to insults or republication of unfavorable news articles by political gadflies when they choose—voluntarily—to enter the public arena.

*Id*. at 619. (reversing stalking injunction against government critic).

### II. Plaintiff is likely to suffer irreparable harm by the possible immediate or imminent filing of a stalking (PPO) or issuance of a no-contact order.

The Sixth Circuit has stated that, "if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." *Bonnell*

*v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001).  At the very least, "irreparable injury is presumed." *Am. Civil Liberties Union Fund of Mich. v. Livingston Cty*., 796 F.3d 636, 649 (6th Cir. 2015) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)).  The loss of even the potential opportunity to exercise First Amendment freedoms in this context constitutes irreparable injury. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  If the City of Inkster proceeds with efforts to file a stalking (PPO) or issue a no-contact order against the Plaintiff, his speech would be restricted and retrained by such unconstitutional orders.  Thus, he would suffer irreparable injury.

Whether the City of Inkster would proceed with a stalking PPO or a no-contact order, both would constitute an unconstitutional prior restraint.  A prior restraint is an "administrative" or "judicial order" that forbids protected speech in advance. *Alexander v. United States*, 509 U.S. 544, 550 (1993).  Federal court's "generally presume prior restraints are unconstitutional." *Novak v. City of Parma*, 932 F.3d 421, 432 (6th Cir. 2019) (citing *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975).

This Court should not treat this threat as speculative, imaginary, or hypothetical.  Remember, the Defendants have already previously filed a (PPO) against Plaintiff Blackwell via Defendant's David Jones's stalking PPO against

Plaintiff Blackwell.  (ECF No. 17-5, Defendant Jones's PPO petition).  Luckily, the Michigan Court of Appeals reversed the PPO on First Amendment grounds.  (ECF No. 17-9); *DWJ v. CLB*, No. 363324, 2023 WL 7270488, at *3 (Mich. Ct. App. Nov. 2, 2023).  This shows that the City of Inkster is able and willing to retaliate against the Plaintiff by filing a stalking (PPO) against him on the basis of his protected speech.

In this instance, Inkster City Councilwoman Felicia Rutledge, while acting and operating in her official capacity at an Inkster City Council meeting, advocated for the City of Inkster to file a stalking (PPO) or no contact order against Plaintiff Blackwell.

## III.    The Balance of Harms Favors A Preliminary Injunction

In a First Amendment injunction analysis, "any potential harm to the parties or others largely depend[s] on the constitutionality of the state action." *Am. Civil Liberties Union Fund of Mich. v. Livingston Cty*., 796 F.3d 636, 642 (6th Cir. 2015) (cleaned up).  Indeed, "no substantial harm [to the government] can be shown in the enjoinment of an unconstitutional policy." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004).  The City of Inkster would suffer no harm because "the freedom of speech protects the right of an ordinary citizen to criticize public officials, again generally without fear of criminal or civil repercussions." *Anders v. Cuevas*, 984 F. 3d 1166, 1184 (6th Cir.

2021) (emphasis added) (quoting *Rudd v. City of Norton Shores*, 977 F.3d 503, 513 (6th Cir. 2020). Here, Inkster City Councilwoman Felicia Rutledge, a duly elected legislator, has publicly called on the City of Inkster to file a stalking (PPO) or issue the Plaintiff a no-contact order.  This would constitute an unconstitutional "civil repercussion."

## IV.    The Public Interest in the First Amendment Favors an Injunction.

It is well-established that "the public interest is served by preventing the violation of constitutional rights." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004).  Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). The public interest favors protecting Plaintiffs' (and all citizens) core First Amendment right to criticize public officials. The Court should grant Plaintiffs' requested injunction.[5]

---

[5] The Court should exercise its discretion to waive the requirement of a bond under F.R.C.P. 65. District courts "have significant discretion to waive the bond requirement in light of the public interest." *DV Diamond Club of Flint, LLC v. U.S. Small Bus. Admin.*, 459 F. Supp. 3d 943, 965 (E.D. Mich. 2020) (cleaned up) (declining to require a bond when granting preliminary injunction on First Amendment grounds against limitation on businesses eligible for PPP loan funds).

## CONCLUSION

Plaintiff respectfully requests that this Court grant Plaintiff's motion and enter a preliminary injunction against the City of Inkster, its officers, employees, agents, and contractors, enjoining the City of Inkster from filing a stalking (PPO) in any court or issuing a no-contact order against the Plaintiff due to his protected speech absent prior leave and approval of the court.  This shall include political speech, speech critical of the government, matters of public concern, political satire, and political parody.

/s/CharlesBlackwell

Dated: November 5th, 2024.

---

See also *Fehribach v. City of Troy*, 341 F. Supp. 2d 727 (E.D. Mich. 2004) (declining to require bond when enjoining political sign ordinance).

**LOCAL RULE CERTIFICATION**

I, Charles Blackwell, certify that this Motion for Preliminary Injunction complies with E.D Mich. Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 points (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served upon all parties and/or attorneys of record to the above cause herein at their respective addresses as disclosed on the pleadings on November 5th, 2024, via:

| _____ U.S. Mail | _____ Facsimile |
| ____X____ ECF/CM Filing | _____ Hand Delivery |
| _____ E-Mail | _____ Federal Express |