**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CHARLES BLACKWELL,

Plaintiff,

v.

No. 2:23-cv-13015-MAG-KGA
Hon. Mark A. Goldsmith
Magistrate Judge Kimberly G. Altman

STEVEN CHISHOLM, in his individual capacity; DAVID JONES, in his individual capacity; and CITY OF INKSTER, a government entity,

Defendants.

---

Charles Blackwell
22655 Fairmont Dr
Apt 102
Farmington Hills, MI 48335
313-739-3597
*PRO SE*

SCHENK & BRUETSCH PLC
Peter E. Doyle (P81815)
211 W. Fort Street, Suite 1410
Detroit, MI 48226
(313) 774-1000
peter.doyle@sbdetroit.com
*Attorney for Defendant David Jones*

Todd Russell Perkins
615 Griswold, Ste 400
Detroit, MI 48226
(313) 964-1702
tperkins@perkinslawgroup.net
*Attorney for Defendants City of Inkster and Steven Chisholm*

---

**DEFENDANT DAVID JONES' MOTION TO BIFURCATE TRIAL PURSUANT TO FED. R. CIV. P. 42(b)**

Cross-motions for summary judgment are pending before the Court: Plaintiff has moved for partial summary judgment on two elements of Count I (ECF No. 128); Defendant David Jones ("Jones") has moved for summary judgment on Count I, the only count in which he is named (ECF No. 129); and Defendants City of Inkster and Steven Chisholm have moved for summary judgment on all claims against them, including the *Monell* claim pled in Count II (ECF No. 130).

Jones maintains that Count I fails as a matter of law. However, in the event the Court does not grant summary judgment and permits the First Amendment retaliation claim and the *Monell* claim to proceed to trial, Jones moves under Federal Rule of Civil Procedure 42(b) for an order bifurcating that trial into two sequential phases: a first phase trying the retaliation claim (Count I) and a second phase, held only if one remains necessary, trying the *Monell* claim (Count II). For the reasons set forth in the accompanying Brief, bifurcation is warranted to avoid substantial prejudice to Jones, to prevent juror confusion, and to serve the convenience of the parties, the Court, and the jury.

Pursuant to E.D. Mich. LR 7.1(a), counsel conferred with Plaintiff on the relief requested herein and Plaintiff denied concurrence.

WHEREFORE, Jones respectfully requests that, in the event the Court denies summary judgment and Counts I and II proceed to trial, the Court grant this motion,

order that Count I be tried first and that Count II be tried separately thereafter if necessary, and grant such other relief as the Court deems just and proper.

Respectfully submitted,

/S/ *Peter E. Doyle*
SCHENK & BRUETSCH PLC
Peter E. Doyle (P81815)
211 W. Fort Street, Suite 1410
Detroit, MI 48226
(313) 774-1000
peter.doyle@sbdetroit.com
*Attorney for Defendant David Jones*

Dated: September 3, 2026

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CHARLES BLACKWELL,

Plaintiff,

v.

No. 2:23-cv-13015-MAG-KGA
Hon. Mark A. Goldsmith
Magistrate Judge Kimberly G. Altman

STEVEN CHISHOLM, in his individual capacity; DAVID JONES, in his individual capacity; and CITY OF INKSTER, a government entity,

Defendants.

Charles Blackwell
22655 Fairmont Dr
Apt 102
Farmington Hills, MI 48335
313-739-3597
*PRO SE*

SCHENK & BRUETSCH PLC
Peter E. Doyle (P81815)
211 W. Fort Street, Suite 1410
Detroit, MI 48226
(313) 774-1000
peter.doyle@sbdetroit.com
*Attorney for Defendant David Jones*

Todd Russell Perkins
615 Griswold, Ste 400
Detroit, MI 48226
(313) 964-1702
tperkins@perkinslawgroup.net
*Attorney for Defendants City of Inkster and Steven Chisholm*

**BRIEF IN SUPPORT OF DEFENDANT DAVID JONES' MOTION TO BIFURCATE TRIAL PURSUANT TO FED. R. CIV. P. 42(b)**

# TABLE OF CONTENTS


TABLE OF CONTENTS ..... ii

ISSUES PRESENTED ..... iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ..... iv

TABLE OF AUTHORITIES ..... v

INTRODUCTION ..... 1

BACKGROUND ..... 3

A. THE CLAIMS ..... 3

B. THE SANCTIONS AND RECOMMENDED INFERENCES. ..... 4

C. THE PENDING SUMMARY JUDGMENT MOTIONS. ..... 6

LEGAL STANDARD ..... 6

ARGUMENT ..... 7

A. BIFURCATING *MONELL* CLAIMS FROM THE INDIVIDUAL-CAPACITY CLAIMS THEY ACCOMPANY IS THE ORDINARY COURSE, AND THE INDIVIDUAL DEFENDANTS ARE TRIED FIRST. ..... 7

B. A SINGLE TRIAL WOULD PREJUDICE JONES, AND THE RECOMMENDED SANCTIONS MULTIPLY THE ORDINARY RISK. ..... 8

1. THE TYPICAL *MONELL* PREJUDICE IS PRESENT HERE. ..... 8

2. THE RECOMMENDED SANCTIONS MUST BE DIRECTED SOLELY AT THE CITY. ..... 10

3. THE INFERENCES PREJUDICE JONES. ..... 11

C. A LIMITING INSTRUCTION CANNOT CURE THE PREJUDICE TO JONES. ..... 12

D. BIFURCATION SERVES CONVENIENCE AND ECONOMY. ..... 13

CONCLUSION ..... 13

## ISSUES PRESENTED

Count I pleads First Amendment retaliation against Jones and Chisholm; Count II pleads a *Monell* claim against the City of Inkster alone. The Magistrate Judge has separately recommended six adverse inferences against the City for its discovery failures.

1. In the event the Court denies summary judgment and permits Counts I and II to proceed to trial, should that trial be bifurcated under Rule 42(b), Count I tried first and Count II second, where courts throughout this Circuit routinely try *Monell* claims separately from the individual-capacity claims they accompany, and where no *Monell* liability can attach absent an individual constitutional violation?

2. Would a single trial expose Jones to incurable prejudice and juror confusion, where the recommended inferences rest on the City's conduct alone yet name Jones, reach "Inkster City Officials," and supply the motive and adverse acts Count I requires Blackwell to prove?

**As to all questions:** Jones answers "Yes".

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

FED. R. CIV. P. 42(b)

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986)

*Wilson v. Morgan*, 477 F.3d 326 (6th Cir. 2007)

*Craddock v. FedEx Corp. Servs., Inc.*, 102 F.4th 832 (6th Cir. 2024)

*Flagg v. City of Detroit*, 715 F.3d 165 (6th Cir. 2013)

# TABLE OF AUTHORITIES

**Cases**

*Applying Doe v. Lexington-Fayette Urban County Government*,
407 F.3d 755 (6th Cir. 2005) ....................................................................5

*Beaven v. U.S. Dep't of Justice*,
622 F.3d 540 (6th Cir. 2010) ....................................................................10

*Bell v. City of Miamisburg, No. C-3-90-258*,
1992 U.S. Dist. LEXIS 22764 (S.D. Ohio Jan. 17, 1992) ....................................9

*Brunson v. City of Dayton*,
163 F. Supp. 2d 919 (S.D. Ohio 2001) ..........................................................9,12

*City of Los Angeles v. Heller*,
475 U.S. 796 (1986) .....................................................................................4,13

*Craddock v. FedEx Corp. Servs., Inc.*,
102 F.4th 832 (6th Cir. 2024) .....................................................................4,6

*Flagg v. City of Detroit*,
715 F.3d 165 (6th Cir. 2013) ..........................................................4, 10, 3, 2,11

*K.W. Muth Co. v. Bing-Lear Mfg. Grp., L.L.C., Case*
No. 01-CV-71925, 2002 U.S. Dist. LEXIS 14926 (E.D. Mich. July 16, 2002) ....7

*Kelly v. Ward, No. C-3-93-110*,
1994 U.S. Dist. LEXIS 21511 (S.D. Ohio July 6, 1994) ......................................9

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978) .......................................................................................4

*Saxion v. Titan-C-Mfg., Inc.*,
86 F.3d 553 (6th Cir. 1996) ..........................................................................7

*Scott v. Clay Cnty.*,
205 F.3d 867 (6th Cir. 2000) ........................................................................13

*Sefu v. City of Memphis*,
No. 08-2150, 2009 U.S. Dist. LEXIS 142235 (W.D. Tenn. June 4, 2009) .....8, 12

*Thaddeus-X v. Blatter*,
175 F.3d 378 (6th Cir. 1999) ....................................................................4

*Wells v. City of Dayton*,
495 F. Supp. 2d 793 (S.D. Ohio 2006) ..................................................9,13

*Wilson v. Morgan*,
477 F.3d 326 (6th Cir. 2007) ...........................................................4, 7,13

*Woodall v. Wayne Cty.*,
No. 17-13707, 2023 U.S. Dist. LEXIS 2882 (E.D. Mich. Jan. 6, 2023) ...............8

**Statutes**

42 U.S.C. § 1983 .....................................................................................3, 4

Mich. LR 7.1 ..............................................................................................2

Section 1983 ........................................................................................4, 7,8

**Other**

FED. R. CIV. P. 37 .....................................................................................10

FED. R. CIV. P. 42 ........................................................................ 2, iv, 6, 13

F.R.E. Rule 404(b) ......................................................................................9

## INTRODUCTION

The nature of this case and the pending sanctions against the City of Inkster compel bifurcation. Count I (against Jones and Chisholm) alleges that they retaliated against Blackwell for his speech at a July 18, 2022 city council meeting. Count II (against the City) asserts a *Monell* claim alleging that the City's council adopted resolutions paying the legal invoices associated with Jones' personal protection order. Courts in this Circuit routinely try such claims in sequence, with the individuals first and the municipality second, because proof of what a city did as a matter of policy invites a jury to condemn the individuals by association, and because a defense verdict on the individual claims ends the case.

Whether any trial will occur is now before the Court. All parties have moved for summary judgment: Jones on Count I, the only count in which he is named (ECF No. 129); the City and Chisholm on Counts I and II (ECF No. 130); and Blackwell for partial summary judgment on two elements of Count I (ECF No. 128). Jones' position remains that Count I fails as a matter of law and that no trial should be necessary. This motion is brought only to the extent that the Court denies summary judgment and permits the retaliation claim and the *Monell* claim to proceed to trial. In that event, the structure of the trial is better answered before the Court issues a final pretrial order.

The ordinary practice would justify bifurcation here on its own. What makes bifurcation necessary is a complication the reported cases do not present. On June 23, 2026, the Magistrate Judge recommended six adverse inferences against the City as a sanction for the City's discovery failures. (ECF No. 120). The recommendation rests on "the City's willfulness and the resulting prejudice to Blackwell" and on the City's failure to respond to the sanctions motions. (*Id.*, PageID.1922, 1924). No finding was made against Jones under any factor. He was not the target of either sanctions motion, was not ordered to respond, and violated no discovery order.

Yet the recommended inferences are not confined to the City on their face. The first inference names Jones and adjudicates his own conduct. Three more reach "Inkster City Officials" and "[o]ne or more Inkster officials" — a category that, under the City Charter and Blackwell's own pleading, could include Jones. Together the inferences supply the retaliatory motive and the adverse acts that Count I requires Blackwell to prove. Jones has objected and asked this Court to confine the inferences to the City; the objections are fully briefed and remain pending. (ECF Nos. 121, 122, 123).

Bifurcation is necessary to prevent prejudice to Jones. An instruction confining the inferences to "the City only" cannot function at a trial where the City is a codefendant and the facts inferred are the very facts at issue against Jones. As it stands, the jury will be instructed to infer that Jones discussed the PPO and its

funding in a closed session, but only in determining the City's liability. This will be an impossible instruction for the jury to follow. Trying Count I first, to a jury that has heard nothing of the City's discovery conduct or the resulting adverse inferences, and trying Count II afterward, only if a second phase is still needed, is the mechanism that gives a City-only limitation the necessary effect.

A bifurcation will avoid prejudice at little cost. The two counts share no elements: Count I turns on what two officials did in July 2022 and why; Count II turns on what the City Council enacted and funded. Further, a defense verdict in Phase One resolves the entire case. Jones asks only that, if both counts survive summary judgment, they be tried in the sequence in which liability must in any event be decided, with the mechanics of the phases left to the Court's discretion.

## <u>BACKGROUND</u>

### A. The Claims

Blackwell alleges that after he displayed an offensive poster and confronted Jones at the July 18, 2022 council meeting, Chisholm captured screenshots of firearms posts from Blackwell's Instagram account and sent them to Jones, who three days later petitioned for a personal protection order, using the screenshots as one of the exhibits in the petition (*Id.*, ¶¶ 23-25, 33-35, 47-48). The Michigan Court of Appeals later reversed the PPO on First Amendment grounds. (*Id.*, ¶ 94). Count I — First Amendment retaliation under 42 U.S.C. § 1983 — is pled against Jones and Chisholm only. (*Id.*, ¶¶ 96-110).

Count II is pled against the City alone and rests exclusively on a legislative-enactment theory: that seven Council resolutions approving payment of the Schenk & Bruetsch invoices constitute official municipal policy. (*Id.*, ¶¶ 111-124). Blackwell disclaims failure-to-train, supervision, and custom-of-tolerance theories. (*Id.*, ¶ 115). In support of Count II he also alleges a council "concealment scheme" – *i.e.* that the PPO billing was disguised under misleading invoice captions and that the council used closed sessions to discuss the PPO and its funding. (*Id.*, ¶¶ 66-78).

The Section 1983 claim imposes liability only for a defendant's own conduct. To prevail on Count I against either individual defendant, Blackwell must prove (1) protected conduct; (2) an adverse action that would deter a person of ordinary firmness; and (3) that the adverse action was motivated at least in part by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). None of these elements relate to the City's alleged post-hac funding of the PPO, its closed sessions minutes, or its conduct in this litigation.

**B. The Sanctions and Recommended Inferences.**

Blackwell's motions to compel and for sanctions were directed, by their own captions and allegations, at the City and Chisholm or at the City and its counsel alone. (ECF Nos. 86, 97, 105, 110). When the Court ordered "All Defendants" to respond to the second motion to compel, Jones answered that the "discovery dispute is between Plaintiff and Defendant City of Inkster" and deferred to the Court. (ECF

No. 99). The Court thereafter ordered only the City to respond to the sanctions motions. (ECF No. 111). Every deficiency identified in the June 23, 2026 Report and Recommendation is the City's. (ECF No. 120, PageID.1921-1922).

Applying *Doe v. Lexington-Fayette Urban County Government*, 407 F.3d 755, 766 (6th Cir. 2005), and weighing "most notably the City's willfulness and the resulting prejudice to Blackwell," the Magistrate Judge recommended that, if the case proceeds to trial, "the trier of fact may be instructed to infer that" (ECF No. 120, PageID.1924):

(1) Defendant David Jones and Defendant City of Inkster (Inkster City Council) discussed the PPO and the PPO funding in Inkster City Council closed session meetings;

(2) Defendant City of Inkster fully funded and/or paid for the litigation expenses and bills for Defendant Jones's PPO against Plaintiff Blackwell;

(3) The Inkster City Council voted via official resolution approving payment of Schenk and Bruetsch PLC legal bills which included Defendant Jones's PPO against Plaintiff Blackwell;

(4) Inkster City Officials have discussed via email Plaintiff Blackwell's speech expressed via email and at Inkster City Council meetings and discussed ways to censor or limit his speech;

(5) One or more Inkster officials have screenshotted and possess social media pictures from Plaintiff Blackwell's social media account in order to use it for purposes of using it in court litigation; and,

(6) The City of Inkster may have had their IT contractor, Nerds Express, block Plaintiff Blackwell's email address in 2021-2022 from being able to email City of Inkster government officials.

The R&R makes no finding as to Jones under any *Doe* factor; however, none of the six inferences is limited, on its face, to the City. Jones objected on July 7, 2026, asking the Court to clarify that the inferences operate solely against the City and to strike Inference No. 1 insofar as it names him. (ECF No. 121). Blackwell opposed. (ECF No. 122). Jones replied on July 15, 2026. (ECF No. 123). As of the date of this motion, the objections remain pending and the scope of any instruction has not yet been determined.

**C. The Pending Summary Judgment Motions.**

On August 17, 2026, Blackwell moved for partial summary judgment against Jones on two elements of Count I. (ECF No. 128). On August 24, 2026, Jones moved for summary judgment on Count I, on the grounds that Blackwell cannot prove the absence of probable cause for the PPO petition, that Jones is entitled to qualified immunity, and that the record defeats the conspiracy theory and the claimed damages. (ECF No. 129). The same day, the City and Chisholm moved for summary judgment on all claims against them, including Count II. (ECF No. 130).

## LEGAL STANDARD

Rule 42(b) permits the Court, "[f]or convenience, to avoid prejudice, or to expedite and economize," to "order a separate trial of one or more separate issues [or] claims." Fed. R. Civ. P. 42(b). "[D]istrict courts may bifurcate a trial to promote convenience, avoid prejudice, or in service of expedition and economy," *Craddock v. FedEx Corp. Servs., Inc.*, 102 F.4th 832, 839 (6th Cir. 2024), and the decision "is

dependent on the facts and circumstances of each case." *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996). The considerations are "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (quoting *Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997)). The movant must show that bifurcation would promote judicial economy and that no party would be prejudiced by separate trials. *K.W. Muth Co. v. Bing-Lear Mfg. Grp., L.L.C.*, Case No. 01-CV-71925, 2002 U.S. Dist. LEXIS 14926, at *8 (E.D. Mich. July 16, 2002) (citation omitted). Each consideration favors bifurcation here.

## ARGUMENT

### A. Bifurcating *Monell* Claims from the Individual-Capacity Claims They Accompany Is the Ordinary Course, and the Individual Defendants Are Tried First.

The Sixth Circuit has approved the structure Jones proposes. In *Wilson*, the trial court bifurcated a § 1983 trial, separating the claims against individual officers from the *Monell* claim against the county and (over the plaintiffs' objection) trying the individual claims first. 477 F.3d at 339-40. The Sixth Circuit affirmed, finding the decision "eminently reasonable in the interests of judicial economy and avoiding possible juror confusion," and holding that "[i]t was not an abuse of discretion to bifurcate individual liability from municipal liability." *Id.* at 340. Because "[t]here can be no *Monell* municipal liability under § 1983 unless there is an underlying

unconstitutional act," it "would be illogical to try the municipality first[.]" *Id.* (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

This District follows the same course. In *Woodall v. Wayne Cty.*, No. 17-13707, 2023 U.S. Dist. LEXIS 2882 (E.D. Mich. Jan. 6, 2023), the court denied a defense motion to sever and instead ordered bifurcation, directing that the jury "first hear opening statements, evidence, and closing arguments" on the individual claim and "reach a verdict on that claim" before any *Monell* evidence is presented, all to eliminate the "potential spillover prejudice" that municipal pattern evidence posed for the individual defendant. *Id.*, at *17-18. And the Western District of Tennessee, in granting bifurcation, ordered that the claims against the officers be determined first and the claims against the city "subsequently, if necessary." *Sefu v. City of Memphis*, No. 08-2150, 2009 U.S. Dist. LEXIS 142235, at *4-6 (W.D. Tenn. June 4, 2009).

Here, the FAC frames the counts for separate trials. Count I runs against the individual defendants only; Count II against the City only. (ECF No. 17, ¶¶ 96, 111). Bifurcation simply requires that the two counts be tried in sequence.

### B. A Single Trial Would Prejudice Jones, and the Recommended Sanctions Multiply the Ordinary Risk.

#### 1. The typical *Monell* prejudice is present here.

Courts order bifurcation in these cases to avoid prejudice. Where a *Monell* claim requires proof of a general policy, a single trial puts before the jury "evidence

offered against the municipal defendant, regarding incidents of alleged misconduct by or in relation to other municipal employees, unrelated to the incident in question in a particular case but relevant to the question of municipal liability for a policy or practice," and that evidence "would be highly prejudicial to individual defendants." *Kelly v. Ward*, No. C-3-93-110, 1994 U.S. Dist. LEXIS 21511, at *22-23 (S.D. Ohio July 6, 1994). In other words:

> The questions regarding the liability of those individual Defendants must be decided by the jury only on the facts of the particular encounter on which this case is based. That is to say, these individual Defendants cannot be made to bear the burden of answering for all of the alleged misdeeds of every past and current [municipal] officer . . . . A jury must be allowed to consider the evidence regarding this incident, with its focus on that evidence, unimpaired by a torrent of information . . . that has relevance only to the Plaintiffs' claims of *Monell* liability.

*Wells v. City of Dayton*, 495 F. Supp. 2d 793, 795 (S.D. Ohio 2006); *Brunson v. City of Dayton*, 163 F. Supp. 2d 919, 924 (S.D. Ohio 2001). Bifurcation in this setting supports the policy behind Rule 404(b): the danger "is not that the jury will find that [the individual defendant] acted in conformity with his own character; rather, the danger is that the jury will find that [he] acted in accordance with some alleged propensity of [municipal officials] generally[.]" *Bell v. City of Miamisburg*, No. C-3-90-258, 1992 U.S. Dist. LEXIS 22764, at *56 (S.D. Ohio Jan. 17, 1992).

That risk is present here. Proof of Count II will put before the jury the Council's closed-session practices, seven funding resolutions, the council-packet approval process, and Blackwell's allegation of a "concealment scheme" in which

PPO billing was allegedly disguised. (ECF No. 17, ¶¶ 66-78, 111-124). That is evidence about how the City governs and accounts for public funds. None of it bears on Jones' actions or motivations in July 2022, but all of it invites a jury to condemn Jones for what the City did.

**2. The recommended sanctions must be directed solely at the City.**

An adverse-inference instruction is a sanction that can only run against the wrongdoer. Rule 37(b)(2) authorizes "further just orders," including "directing that . . . designated facts be taken as established," only where "a party . . . fails to obey an order to provide or permit discovery," and its sanctions are aimed throughout at "the disobedient party." Fed. R. Civ. P. 37(b)(2). The Sixth Circuit's adverse-inference standard is to the same effect: the movant must show that "the party having control over the evidence had an obligation to preserve it," that it was destroyed "with a culpable state of mind," and that it was relevant. *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010); *Flagg v. City of Detroit*, 715 F.3d 165, 177 (6th Cir. 2013). Jones had no control over the disputed discovery, and the R&R does not find otherwise.

*Flagg* shows how such sanctions should be confined. There, the district court found that the City of Detroit "clearly acted culpably and in bad faith" and granted an adverse-inference instruction "to be directed at Defendant City of Detroit only," while an individual defendant remained in the case. 715 F.3d at 172. The Sixth

Circuit affirmed. *Id.* at 177-78. But because summary judgment was granted to both remaining defendants, no jury ever heard the instruction. This Circuit has not addressed how a City-only limitation is to be administered before a jury simultaneously deciding a non-culpable codefendant's liability. Bifurcation is the only way to resolve that issue.

**3. The inferences prejudice Jones.**

Inference No. 1 names Jones and adjudicates his conduct: that he "discussed the PPO and the PPO funding in Inkster City Council closed session meetings." It establishes his participation in, and knowledge of, the very coordination Count I alleges, as a sanction for the City's failure to produce minutes Jones never controlled.

Inferences Nos. 4 and 5 are broader still, because they run to "Inkster City Officials" and "[o]ne or more Inkster officials." A jury told it may infer that "Inkster City Officials . . . discussed ways to censor or limit [Blackwell's] speech" has been handed the retaliatory motive that is the third element of Count I. A jury told it may infer that "[o]ne or more Inkster officials have screenshotted and possess social media pictures . . . in order to use it . . . in court litigation" has been instructed find the precise adverse act alleged against Chisholm and the predicate for the PPO exhibit alleged against Jones. (ECF No. 17, ¶¶ 33-34, 48, 104).

Jones asked this Court to confine the inferences to the City. Blackwell opposed. (ECF No. 122). If the inferences unambiguously operated against the City

alone, Blackwell would have no reason to resist an order saying so. His opposition confirms that he intends to use sanctions resulting from the City's conduct to attempt to establish liability against Jones. Accordingly, where *Monell* evidence may be used against an individual defendant, "the need for separate trials . . . in order to avoid the potential prejudice discussed [above] is real rather than being speculative." *Brunson*, 163 F. Supp. 2d at 924 n.7.

**C. A Limiting Instruction Cannot Cure the Prejudice to Jones.**

The second *Martin* consideration, juror confusion, independently favors bifurcation. Even if the Court sustains Jones' objections and confines the inferences to the City, a single jury would be asked to hold two incompatible propositions at once: that it may infer that "Inkster City Officials" discussed ways to censor Blackwell's speech, and that it may not draw that inference against the Inkster City Attorney whose liability it is deciding in the same trial. And if the Court overrules the objections, the prejudice in a single trial would be manifest. There would be no way for the jury to separate an adverse inference that explicitly names Jones when weighing evidence against Jones on the retaliation claim. Bifurcation is therefore necessary to "avoid any possibility that the jury would confuse the issues of liability of the Officers with those of the City such that it would prejudice the Officers." *Sefu*, 2009 U.S. Dist. LEXIS 142235, at *6.

**D. Bifurcation Serves Convenience and Economy.**

Because no *Monell* liability can attach without an underlying constitutional violation, a defense verdict in Phase One resolves Count II as well. *Wilson*, 477 F.3d at 340 ("because the jury found no constitutional violation by the individual defendants, the county could not have been found liable under *Monell*"); *Heller*, 475 U.S. at 799; *Scott v. Clay Cnty.*, 205 F.3d 867, 879 (6th Cir. 2000). Any residual inconvenience is slight, and it "would pale in comparison to the prejudice which would befall" Jones in a single trial. *Wells*, 495 F. Supp. 2d at 796.

Here, this motion is brought well in advance of trial, while the summary judgment motions are pending and before a final pretrial order or jury instructions have been prepared. Ordering bifurcation now will allow the parties to know the structure of their trial before pretrial filings are due, in the event a trial is necessary.

**CONCLUSION**

For the foregoing reasons, Jones respectfully requests that that, if the Court's rulings on the pending summary judgment motions (ECF Nos. 128, 129, 130) leave Count I and Count II for trial, the Court bifurcate that trial under Rule 42(b).

Respectfully submitted,

*/s/ Peter E. Doyle*
Peter E. Doyle
SCHENK & BRUETSCH PLC

Dated: September 3, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2026, I electronically filed the foregoing with the Clerk of the Court using the e-filing system, which will send notification and copy of same electronically to all attorneys of record.

*/s/ Peter E. Doyle*
Peter E. Doyle
SCHENK & BRUETSCH PLC

Dated: September 3, 2026